IN THE UNITED STATES DISTRICT COURT
the DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE: JEFFREY B. CLARK, | Case No. _____ |
| A member of the Bar of the District of Columbia Court of Appeals (Bar No. 455315) | (Related to: |
| | Case No. 1:22-mc-00096-RC & Case No. 1:22-mc-0117-RC) |
| D.C. Board of Professional Responsibility Docket Nos. 22-BG-059 & 22-BD-039 Disciplinary Docket No. 2021-D193 | Judge _____ |
| | On removal from the D.C. Court of Appeals Board of Professional Responsibility |

RESPONDENT JEFFREY B. CLARK'S THIRD NOTICE OF REMOVAL TO
THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF
COLUMBIA

PLEASE TAKE NOTICE:

Pursuant to 28 U.S.C. §§ 1331, 1441, 1442, 1446, and 1455, Jeffrey B. Clark ("Respondent") hereby gives notice and for the third time removes this quasi-prosecution case from the District of Columbia Court of Appeals ("DCCA") to the United States District Court for the District of Columbia. Respondent previously filed *two* removals of this case, neither of which has yet been remanded. First was the removal filed on October 17, 2022, of the main case from the DCCA's adjunct bodies—the District of Columbia Board of Professional Responsibility ("Board") and the Board's assigned Hearing

Committee.

The second was filed November 25, 2022 and was of a motion to enforce a subpoena the D.C. Office of Disciplinary Counsel ("ODC") filed in the District of Columbia Court of Appeals ("DCCA"). ODC filed that motion to enforce even though the October 17, 2022 First Notice of Removal specifically included removal of the subpoena ODC sought to enforce and even though the First Removal had the effect of removing the entire criminal-civil hybrid case to this Court and ending supervisory jurisdiction (for instance over subpoena enforcement) on the part of the DCCA. That is, unless and until this case is remanded to (including after any ensuing appeals from such an order entered by this Court) the DCCA and its adjunct bodies.

### ODC'S REPEATED ATTEMPTS TO CONTINUE LITIGATING IN THE DCCA'S ADJUNCT FORUMS

Despite the two prior removals, and despite no order of remand having been entered in either case, ODC attempted to serve Respondent with a third subpoena on December 27, 2022. Accordingly, Respondent brings this Third Notice of Removal with respect to the third subpoena. Worse yet, ODC's attempt to serve the subpoena was defective, as we describe below.

Respondent's counsel signs this Third Notice of Removal pursuant to Rule 11 of the Federal Rules of Civil Procedure and Respondent pleads the following in accordance with the parallel requirements of 28 U.S.C. § 1446(a) and § 1455(a) for a "short and plain statement of the grounds for removal":

## INTRODUCTION

1.  This is proper case for removal under the federal officer removal statute, 28 U.S.C. § 1442—the statute that forms the principal, but not exclusive, basis for removal herein. Respondent is a former high-ranking federal officer at the United States Justice Department. Specifically, Respondent was a Senate-confirmed Assistant Attorney General for the Environment & Natural Resources Division from November 1, 2018 to January 14, 2021, as well as the former Acting Assistant Attorney General of the United States for the Civil Division from September 5, 2020 to January 14, 2021.

## PROCEDURAL HISTORY

2.  On October 17, 2022, Respondent removed to this Court the disciplinary charges brought against him by the D.C. Disciplinary Counsel, who heads up ODC. That is case number 1:22-mc-00096-RC pending in this Court.

3.  The prior Removal also specifically encompassed a subpoena for the production of documents dated October 6, 2022, served upon Respondent (the "Second Subpoena"). *See* Case No. 1:22-mc-00096-RC, Dkt. #1, ¶¶ 15-18, 21, 26, 57-59.

4.  The *second* Notice of Removal was filed because, notwithstanding the inclusion of the Second Subpoena in the prior Removal on October 17, 2022, ODC filed a motion to enforce the Second Subpoena in the District of Columbia Court of Appeals ("DCCA") on October 26, 2022—*a full nine days after the first removal*. ODC filed

this motion to enforce the Second Subpoena despite its inclusion in the prior removal, and despite the rule of 28 U.S.C. § 1446(d) that once notice of removal is filed as to a "civil action" (defined by 28 U.S.C § 1442(d)(1) to include a subpoena) with the clerk of the "State court" and notice is given to adverse parties, "the State court shall proceed no further unless and until the case is remanded." There has been no remand as of the date of this filing.[1]

5.  On December 19, 2022, Disciplinary Counsel asked counsel for Respondent if we would accept service of a new subpoena for certain documents. *See* Exh. 1. On December 23, 2022, counsel for Respondent declined to accept service, explaining that as a result of the two prior removals, there was no authority in the DCCA or its adjuncts to issue a subpoena, and that the case resided instead exclusively in this Court and thus was subject to its rules and future orders concerning discovery. *See* Exh. 2.

6.  Two days after Christmas, on December 27, 2022, Disciplinary Counsel attempted to serve Respondent at his home. Respondent, through his son, communicated to the process server that he would not accept service for the same reasons given by his

---

[1] As the Court is aware from the First Removal, Respondent takes the position that under DCCA precedent, bar disciplinary proceedings in the District constitute criminal-civil hybrid matters and thus the civil case removal rule in 28 U.S.C. § 1446(d) is the proper rule to apply (read in light of the need to harmonize the civil with criminal removal statutes) to bar further action in the court removed from "unless and until the case is remanded."

counsel in Exhibit 2. *See* Exh. 3.

7.   That evening, Respondent's counsel wrote to Disciplinary Counsel remonstrating over his stubborn attempt to serve a new subpoena under the authority of the DCCA and its adjuncts after the two prior removals had occurred and before any remand had first been ordered (which would include any ensuing appeals). *See* Exh. 4.

8.   Disciplinary Counsel replied later that evening that "You have never cited authority that prevents me from serving Mr. Clark. We will continue to do so and will cite his refusal to accept service as a factor in aggravation of sanction." Exh. 5. This assertion was made despite extensive briefing in the Second Removal that the Second Subpoena and the motion to enforce it were barred by the pending First Removal. And this bar obviously embraced ODC's improper attempts to litigate the case in any fashion (such as by serving new subpoenas) in the forum removed from.

9.   Disciplinary Counsel wrote again the next day, taking the position that service was effective even though it was not in fact completed and no copy of the subpoena was left at Respondent's residence. The email then for the first time attached a copy of the subpoena. The email is attached hereto as Exh. 6 and the unserved subpoena is attached thereto as Exh. 7. This unserved subpoena will be referred to as the Third Subpoena. Mr. Fox's December 28, 2022 email indicated that despite the two prior removals, he was going to proceed with a hearing against Mr. Clark on January 9, 2023. *See* Exh. 6.

10. Disciplinary Counsel stated that his process server told him that he (the process server) had read the Third Subpoena to Mr. Clark. This is inaccurate. In response to questions about what the document to be served was, the process server read off the serving entity and the case number it pertained to, while he stood outside Mr. Clark's house. No other parts of the subpoena were read to Respondent. *See* Exh. 3 (Declaration of Jeffrey B. Clark).

11. On January 3, 2023, Disciplinary Counsel Mr. Fox, sent us a draft motion to consent to a continuance of the January 9, 2023 hearing date before the D.C. Bar Hearing Committee, citing the COVID testing results of the spouse of one of Mr. Fox's planned witnesses. *See* Exh. 8. Undersigned counsel told Mr. Fox that we would always be willing to accommodate illness-related issues via scheduling adjustments but that we could not agree to a continuance of a removed proceeding since the January 9, 2023 hearing date was mooted when we removed the case to this Court. We made a counterproposal that Mr. Fox should notify ***this Court*** that he had agreed not to go forward with a January 9, 2023 hearing before Hearing Committee 12 and that one of his witnesses had contracted COVID. *See* Exh. 9.

12. Mr. Fox's next step was to file his motion for a continuance on January 4, 2023. *See* Exh. 10.[2] Concerning our position on his motion, Mr. Fox simply stated:

---

[2] To be clear, in addition to this Third Subpoena, this Third Removal Notice embraces the January 4, 2023 continuance motion and any other post-December 27, 2022 events in the

"Respondent will not consent to this motion." *Id.* Fortunately, the Hearing Committee never had to rule on the motion but it remains the case that Mr. Fox deceptively reported Respondent's position. He did this by omission, leaving the Hearing Committee with the impression that Respondent and his counsel had flatly refused to accommodate a witness's illness, which was not our position at all as Exhibit 9 makes clear.

13. Undersigned counsel emailed Mr. Fox on January 4, 2023 to renew a request that he withdraw his December 27, 2022 subpoena and to ask him to correct his mischaracterization of our position in his continuance motion. *See* Exh. 11. Specifically, we asked him to put this language about our position before the Hearing Committee: "Respondent believes any illness should be accommodated by the relevant adjudicative body (which is the U.S. District Court) and thus does not consent to this motion filed to Hearing Committee 12 on the ground that the pending removal has divested the Hearing Committee of power over this matter, mooting the need for a continuance." *Id.*

14. Later that same day, Mr. Fox refused to make this correction and purported to not understand our position. *See* Exh. 12. We can only conclude that Mr. Fox was trying to induce us to make a filing or lodging to the Hearing Committee so that he could

---

DCCA and its adjuncts that were necessitated by ODC's refusal to patiently wait for this Court's rulings.

argue that we had acquiesced in this case being adjudicated before the Hearing Committee. However, we refused to do so.

15. Accordingly, we emailed Mr. Fox on January 5, 2023 both to flag his continuing silence on whether he would agree to withdraw the unserved December 27, 2022 subpoena and to rebut his January 4, 2023 email. *See* Exh. 13 (noting that from that date forward we would assume Mr. Fox was refusing to withdraw the December 27, 2022 subpoena in light of his repeated silence in response to our inquiries on that point).

16. We were in the process of drafting this Third Notice of Removal when on January 17, 2023, the DCCA issued an order deferring to this Court as follows (making further engagement with Mr. Fox concerning ODC's December 27, 2022 subpoena unnecessary):

> On consideration of Disciplinary Counsel's motion to enforce the subpoena duces tecum in Disciplinary Docket No. 2021-Dl93; respondent's opposition to Disciplinary Counsel's motion, Disciplinary Counsel's reply to respondent's opposition, and respondent's notification of second removal to federal court, it is
>
> ORDERED that Disciplinary Counsel's motion to enforce its subpoena duces tecum is held in abeyance until respondent's removal of this matter to the United States District Court for the District of Columbia has been resolved. It is
>
> FURTHER ORDERED, that the parties hereto shall promptly inform us of the District Court's action on the removal.

Exh. 14. The passage of the January 9, 2023 hearing date originally set by the Hearing

Committee's Chair without a hearing being held and the issuance of this January 17, 2023 DCCA order make clear that the DCCA and its adjuncts are unlikely to take any further adjudicatory action in this matter prior to action by this Court. Nevertheless, abeyances are discretionary and thus, out of an abundance of caution, we have still filed this Third Notice of Removal.

17. This third removal should not have been necessary and Mr. Fox should not have been trying to harass Mr. Clark over the Christmas holidays with a process server trying to serve a subpoena to adjudicate this matter in the forum it was removed from and threatening to sanction him for standing on his legal rights and not accepting *ultra vires* service. We find Mr. Fox's litigation conduct alarming and his purported confusion over our positions concerning the impact of removal to be dubious. Regardless, such treatment of a former federal official in a local forum is exactly the sort of problem Congress designed Section 1442 to address.

## SECTION 1442 AND SUBPOENAS

18. 28 U.S.C. § 1442(d)(1) defines "civil action" and "criminal prosecution" not only to include "a subpoena for testimony or documents" but specifies that such actions "include any proceeding (***whether or not ancillary to another proceeding***)." (Emphasis added.) This means the fact that the Charges initiating the case were removed in the First Removal is no barrier to a subsequent removal of the Third Subpoena, even though this Third Notice of Removal as to the Third Subpoena is

ancillary to the First Removal of the entire action. The text of Section 1442(d)(1), in other words, anticipates situations like this one in which a subsequent removal can relate to, *i.e.*, be "ancillary to another proceeding."

19. The Third Subpoena calls for production of documents at a hearing on January 9, 2023 and thus connects directly to the Charges that were previously removed (even though the January 9, 2023 hearing date before the Hearing Committee is now moot). The Third Subpoena seeks documents that are referred to in an order that was unsealed in connection with the resolution of privilege objections arising from the execution of search warrants on Respondents' Outlook email account. *See* Exh. 7 (attachment). The Third Subpoena is thus incident to ODC's charges against the Respondent, which challenge the propriety of advice Respondent is alleged to have prepared and delivered, ***while a federal officer***, though that advice was never presented to any court or other body that could be characterized as a tribunal. Instead, the alleged advice was given exclusively within the confines of the Justice Department and/or inside the sanctum of the Oval Office of the White House, where it was put to the President of the United States himself.

20. No State possesses the power to supervise the internal operations and deliberations of any branch of the federal government. The Supremacy Clause and federal officer removal statutes, 28 U.S.C. §§ 1442 and 1446(g), ensure the preservation of the federal structure by vesting Article III courts with the jurisdiction and responsibility

to adjudicate the federal statutory claims, constitutional claims, and other defenses of individuals entrusted with federal authority. In this case, it is the District of Columbia government, a creature of Congress created pursuant to its plenary powers under the Seat of Government Clause, U.S. Const. art. I, § 17, that claims the power to supervise the internal operations and deliberations of the Executive Branch. This case is, therefore, a direct attack on the fundamental principle of separation of powers (instead of federalism, which would apply if a *state* bar were instead trying to regulate Respondent's conduct inside the federal Executive Branch). ODC is thus a federal office that traces its power and existence to the Legislative Branch. As an Article I court, the DCCA has no, or at best only limited authority (*see* 28 U.S.C. § 530B), to supervise the conduct of attorneys who conduct the business of the federal government and, like Congress itself, the DCCA has no authority whatsoever to discipline a federal counselor to the President based on Disciplinary Counsel's own—or congressional—disagreement with the substance or development of advice and recommendations concerning Department of Justice law enforcement policy.

21. Accordingly, ODC, whether viewed separately or as an investigative and prosecutorial agency of the DCCA, has no jurisdiction to intrude upon, politicize, or second-guess advice given to the President that, under any reading of the D.C. Rules of Professional Conduct, were consistent with Respondent's duties. Nor does it have the authority to use its subpoena power to advance the political agenda of a

single U.S. Senator who could not muster the votes from his colleagues on the U.S. Senate Judiciary Committee to wield the Committee's own subpoena power.

22. Any request to remand this case should thus be denied. Instead, this case should be consolidated with the First Removal, Case No. 1:22-mc-00096-RC and the Second Removal, Case No. 1:22-mc-0117-RC, and adjudicated in a more orderly fashion than has occurred up to this point in the DCCA and its adjuncts. Specifically, the *first test* should be whether the Board even has jurisdiction to allow ODC to serve and compel compliance with the Third Subpoena. In addition to the reasons set forth in the First and Second Removals, removal here is especially necessary because ODC is proceeding as if there were no removal at all, or as if its motions to remand had already been granted.

23. Until its January 4, 2023 continuance request lodged with the Hearing Committee, ODC's position was that the hearing was going forward on January 9, 2023, despite Respondent's objections and regardless of the First and Second Removal and regardless of the fact that ODC's motions to remand here remain pending. It does not appear that the Board was ever in agreement with ODC, as all post-removal documents with the Board are returned marked "Lodged" or "Received" rather than "Filed," and the transmittal emails from the Case Manager for the Board all include this basic legend: "Your [document] has been received and [is] lodged in Board Docket No. 22-BD-039, which has been removed to the U.S. District Court for the

District of Columbia."

24. ODC's continued resort to DCCA and Board subpoenas and its original intention to go forward with the January 9, 2023 hearing despite two prior removals without remand contravened the jurisdiction and authority of this Court to decide the pending motions for remand. On January 17, 2023, however, the DCCA placed the case into abeyance and that put an end to the stubborn way ODC was proceeding.

25. As we have pointed out before, however, ODC's course of conduct was pursued in defiance of binding Supreme Court law as to the unavoidable need for jurisdictional challenges to be addressed *at the outset of any case*. Not only did ODC, the Hearing Committee, and Board proceed as if the DCCA and its adjuncts could exercise hypothetical jurisdiction despite a challenge to subject matter jurisdiction, until very recently ODC was proceeding as if no removal had been filed or as if its motions to remand had been granted. *Contrast Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574 (1999) (threshold jurisdictional questions must be resolved before the merits); *Steel Co.* v. *Citizens for Better Env't*, 523 U. S. 83, 94-95 (1998) (requirement to establish subject matter jurisdiction as a threshold matter is "inflexible and without exception" and, for that reason, the Supreme Court rejected the doctrine of "hypothetical jurisdiction"); *see also UMC Dev. LLC v. District of Columbia*, 120 A.2d. 37, 42 (D.C. 2015) (standing is a matter posing "a threshold jurisdictional question which must be addressed prior to and independently of the merits of a party's

claim."). The purpose of the Third Subpoena is to assist adjudication of the Charges that the Board wrongly determined could go forward without a threshold jurisdictional inquiry first being resolved in ODC's favor.

## BACKGROUND AND PROCEDURAL REQUIREMENTS

26. Jeffrey B. Clark is Respondent in the matter currently styled "*In the Matter of Jeffrey B. Clark, Respondent,*" pending in the DCCA as Case No. 22-BG-059, which relates to Disciplinary Docket No. 2021-D193 and Board of Professional Responsibility ("Board") Docket No. 22-BD-039 (collectively, the "Deemed-State Court Action").[3]

27. Out of an abundance of caution, Respondent fully incorporates by reference all of the First and Second Removals into this Third Removal.

28. In connection with the First Removal, Respondent had suggested that these matters

---

[3] The District of Columbia is not a "State." However, it **can sometimes be** deemed the equivalent of a "State" for certain purposes, *i.e.,* when Congress explicitly so provides. And Congress has so provided here as to the exercise of removal jurisdiction. *See* 28 U.S.C. § 1442(d)(5) (defining the District as a State for removal purposes); *see also* 28 U.S.C. § 1451(2) (same). We flag this point because it will become important, **by contrast**, that Congress's authorization **for the substantive application of state ethics rules** to members of state bars actually **does not define the District as a "State." See 28 U.S.C. § 530B.** This means that D.C. court actions concerning attempted discipline of Justice Department attorneys are removable to this Court but—as we will show in a forthcoming motion to dismiss to be filed at the appropriate juncture after any disputes over removal jurisdiction are first resolved—local D.C. courts possess no delegated federal authority to discipline Justice Department attorneys. And that lack of authority is especially apparent as to attempts to exercise District disciplinary power over lawyers who have not even appeared in front of such a local court in the ordinary course of litigation, as is true of Respondent here.

would best be captioned "Hamilton P. Fox, III, Disciplinary Counsel, Petitioner v. Jeffrey B. Clark, Respondent." The Clerk's Office has apparently rejected that suggestion including by giving this case a "-mc-" (miscellaneous) case number. Respondent is unsure of the implications of that administrative decision concerning case numbering, but reserves all of his rights, should at some point any claim be made that the numbering decision carries adverse substantive significance for Respondent.

29. This Third removal is timely with respect to the Third Subpoena because it was filed less than 30 days after purported (but not conceded) service of the Third Subpoena on December 27, 2022. It is also timely on multiple other grounds, as described in the next several paragraphs. Recognize at the outset that the federal officer removal statute itself, 28 U.S.C. § 1442, does not specify a time limit for removal. As a result, when federal officer cases are removable depends on whether the prosecution or case against the federal officer is a civil case, a criminal case, or a hybrid of the two.

30. Respondent incorporates herein by reference the allegations of the Second Removal with respect to timeliness under 28 U.S.C. § 1455(b)(1) arising from the hybrid civil-criminal nature of bar disciplinary proceedings.

31. As to the removal of subpoenas from state court (or deemed equivalents), 28 U.S.C. § 1446(g) addresses the issue of timeliness and provides that Section 1455(b)(1) "is satisfied if the person or entity desiring to remove the proceeding files the notice of

removal not later than 30 days after receiving, through service, notice of any such proceeding."

32. Pursuant to 28 U.S.C. § 1446(a), Respondent's counsel hereby attaches hereto a copy of all process, pleadings, and orders served on him in connection with the Third Subpoena. Specifically, Exhibits 7 (unserved Third Subpoena dated December 27, 2022), 10 (continuance motion lodged with Hearing Committee 12 dated January 4, 2023), and 14 (DCCA abeyance order dated January 17, 2023) comprise this body of process, pleadings, and orders.  No other filings have been made regarding the Third Subpoena, and all other filings related to the Charges were previously filed with the First Notice of Removal in Case No. 1:22-mc-00096-RC, and in the Second Removal in Case No. 1:22-mc-0117-RC, and need not be filed again here. If filing of the other filings related to the Charges is required, Respondent will do so.

**BRIEF SUMMARY OF FACTUAL ALLEGATIONS**

33. The Third Subpoena purports to be issued in connection with Charges filed against Respondent by Disciplinary Counsel Fox. Mr. Fox is seeking to investigate and penalize Respondent's discretionary actions as the Assistant Attorney General over two DOJ Divisions in the rough time frame of December 2020 to January 3, 2021, and to uncover the research and facts on which Mr. Clark relied while in office in making legal policy recommendations to the Acting Attorney General of the United States, to the Principal Associate Deputy Attorney General (the "PADAG"), then

16

performing the duties of the Deputy Attorney General, and, most importantly, to the President of the United States. Those recommendations are pleaded in the Charges to be housed in a document called the "Proof of Concept Letter" that is claimed to have been circulated by Respondent to the Acting Attorney General and the PADAG. Its contents eventually became available to the White House Counsel and the President of the United States, and were later anonymously leaked to the *New York Times* in late January 2021 by persons unknown to the Respondent. A copy of the Charges was attached to the First and Second Renewals and is incorporated herein by reference.

34. The Third Subpoena seeks production of 331 saved versions of a document characterized as a "book outline" by the DOJ filter team reviewing electronic files from Respondent's Outlook account that were obtained by search warrant. Disciplinary Counsel learned of the existence of these documents as a result of the unsealing on December 15, 2022 of an order that had been issued on September 27, 2022 by Chief Judge Beryl Howell. Judge Howell ruled the document was not protected by any applicable privilege and that it could be produced to DOJ's investigative team. The purpose and the proceedings regarding unsealing the order themselves were entirely *ex parte* and unknown to Respondent. The unsealing order was entered the Friday before the House January 6th Select Committee released the 845-report of its investigation.

35.  Respondent objects to the Third Subpoena on a panoply of grounds arising from and based on federal constitutional law and the powers and privileges of the presidency and Executive Branch such as separation of powers, the Supremacy Clause, executive privilege, law enforcement privilege, etc.

## PRIOR PROCEDURAL HISTORY

36.  Respondent previously described the procedural history of the removed proceeding in the First and Second Removals and the bulk of that recitation is incorporated herein by reference.

37.  On September 15, 2022, the DCCA filed an order unsealing all of the investigatory stage filings in that court, and disposing of ODC's Motion to Enforce the First Subpoena by holding that, "because disciplinary proceedings have been initiated the pending [investigative-stage] subpoena" was no longer operative. The Motion to Enforce was dismissed as moot; and Respondent's Motion to Quash the subpoena was denied. The DCCA ordered, pursuant to D.C. Bar Rule XI § 18(c) "that all motions to quash a subpoena must be heard and decided by a Hearing Committee designated by the Executive Attorney;" and held that the power to issue subpoenas under D.C. Bar Rule XI § 18(a) rests with either Disciplinary Counsel or a member of a Hearing Committee.

38.  The reasoning of the DCCA in dismissing the first motion to enforce applies with equal force to both the Second Subpoena and the Second Motion to Enforce—it is an

investigative subpoena on its face and therefore invalid (the subject of the Second

Removal). It similarly applies with equal force to the Third Subpoena, the subject of

this Third Removal.

39.  The appropriate remedy for the Third Subpoena is this Third Removal. Respondent

will file as many removals as are required to parry ODC's obdurate refusal to

recognize the authority and jurisdiction of this Court, though we hope that the

January 17, 2023 DCCA abeyance order will put a stop to ODC's conduct.

40.  Respondent again puts ODC, the Board, and its Hearing Committees on notice,

however, that if, for some reason this case is ultimately remanded, even after

appellate review, Respondent reserves his right to challenge the malconstructed

sequencing the DCCA has put in place for its discipline cases (wherein factual

hearings inefficiently go before the resolution of jurisdictional disputes) via the filing

of an extraordinary writ or the like in the DCCA shortly after remand.

## REMOVAL JURISDICTION EXISTS OVER THIS CASE PURSUANT TO THE FEDERAL OFFICER REMOVAL STATUTE, 28 U.S.C. § 1442.

41.  The first basis for removing the Third Subpoena arises because the Third Subpoena

is necessarily part of the Charges removed to this Court in the First Removal, and

therefore arises from and relates to information gathered and reviewed and actions

undertaken by Respondent while he was a federal officer in the course of his

performance of his duties as a federal officer.[4] As a result, this matter falls squarely

within the removal jurisdiction of 28 U.S.C. § 1442, regardless of the nature of the

relevant cause of action brought against Respondent or how any such action is styled

by its plaintiff or proponent. *See id*. § 1442(a)(1) (allowing removal of actions filed

against a federal officer "in an official or individual capacity") (emphasis added).

42. Section 1442(a)(1) provides as follows:

> (a) A civil action or criminal prosecution that is commenced in a State court
> and that is against or directed to any of the following may be removed by
> them to the district court of the United States for the district and division
> embracing the place wherein it is pending:
>
> > (1) The United States or any agency thereof or any officer (or any
> > person acting under that officer) of the United States or of any
> > agency thereof, in an official or individual capacity, for or relating to
> > any act under color of such office or on account of any right, title or
> > authority claimed under any Act of Congress for the apprehension
> > or punishment of criminals or the collection of the revenue.

43. This case can clearly be seen as either a "civil action or criminal prosecution." *See,*

*e.g., In re Artis*, 883 A.2d at 101 (referring to "a disciplinary case, which is 'quasi-

criminal' in nature"). Indeed, the main holding of *In re Artis* is that the anti-

compelled testimony clause of the Fifth Amendment to the U.S. Constitution applies

to disciplinary proceedings like this one.

44. Moreover, in reality, ODC's Charges trigger a criminal-civil hybrid. *See* BLACK'S LAW

---

[4] The material sought in the Third Subpoena was written after Respondent left federal
service but is a retrospective involving, most importantly, events that occurred during
the period of Respondent's federal service.

DICTIONARY (defining "quasi" to carry a number of meanings: "[s]eemingly but not actually; in some sense or degree; resembling; nearly.") ("emphasis added"). Since it is obvious that *In re Artis*, by providing some protections afforded in the criminal context, is not saying that disciplinary proceedings are "not actually" criminal to any degree, the most applicable meanings of "quasi" in *Artis* are clearly "in some sense or degree; resembling; nearly."

45. In other words, District disciplinary proceedings are to some degree criminal, meaning that their remaining degree is civil and thus opening up to Respondent the use of both civil and criminal removal statutes.

46. For purposes of Section 1442, this case was "commenced in a State Court." The DCCA is clearly a court of the District of Columbia. And Section 1442(d)(5) defines the "District of Columbia" and certain other federal entities as "States." 28 U.S.C. § 1442(d)(5).

47. The Third Subpoena and therefore this case are "against or directed to" Respondent, 28 U.S.C. § 1442(a), and relate to his conduct as "an[] officer . . . of the United States or of any agency thereof." Id. at § 1442(a)(1). As noted above, Mr. Clark was a double Assistant Attorney General at the United States Department of Justice, beginning (as to one of his offices) on November 1, 2018 and ending January 14, 2021 (as to both of his offices).

48. Section 1442 federal officer removal exists when the underlying conduct occurs while

a defendant is in federal employ. *See*, e.g., *Williams v. Lockheed Martin Corp.*, 990 F.3d 852 (5th Cir. 2021) (exercising civil removal jurisdiction over a former employee plaintiff exposed to asbestos while working for the predecessor corporation to Lockheed Martin, where that employee helped to build federal government rockets for NASA); *Kentucky v. Long*, 837 F.2d 727 (6th Cir. 1988) (exercising removal jurisdiction as to a criminal action filed in 1986 against a former FBI agent, relating to actions undertaken when he was in federal employ from 1979 to 1981). All that matters is that the Third Subpoena seeks documents from Mr. Clark pertaining to Mr. Clark's work during his federal employment, a fact which is undisputed.

49. The Third Subpoena brings Mr. Clark's conduct into question "[a] for or relating to any act under color of such office or [b] on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue." 28 U.S.C. § 1442(a)(1). The subject matter of the documents requested by the Third Subpoena relates to official-duty "acts" that occurred under color of Mr. Clark's federal office. They also relate to potential actions pursuant to DOJ "authority claimed under any Act of Congress for the apprehension or punishment of criminals." 28 U.S.C. § 1442(a)(1). For any ensuing election investigations could have led to federal criminal charges.

50. Respondent objects to the Third Subpoena on the same substantive grounds on which he objected to the First and Second Subpoenas. To those prior subpoenas, he

advanced defenses based on the doctrines of separation of powers, federalism, the lack of jurisdiction in the DCCA, immunity, the Opinion Clause, the Take Care Clause and numerous other legal provisions and doctrines.

51. "We must construe the statute liberally in favor of removal, *Watson v. Philip Morris Cos.*, 551 U.S. 142, 147 (2007), and 'we credit the [officer's] theory of the case for purposes of both elements of' the removal inquiry, [*Jefferson Cty, Ala. v.] Acker*, 527 U.S. [423,] 432 [(1999)]." *K&D LLC v. Trump Old Post Off. LLC*, 951 F.3d 503, 506 (D.C. Cir. 2020) (the two elements being (1) raising a colorable federal defense that (2) relates to any act under color of the removing federal official's office).

52. 28 U.S.C. § 1442(d)(1) (emphasis added) provides as follows:

> The terms "civil action" and "criminal prosecution" include any proceeding (***whether or not ancillary to another proceeding***) to the extent that in such proceeding a judicial order, ***including a subpoena for testimony or documents, is sought or issued***. If removal is sought for a proceeding described in the previous sentence, and there is no other basis for removal, only that proceeding may be removed to the district court.

53. Ancillary removals are clearly permissible and this Third Removal (based on ODC attempting to serve a Third Subpoena) is ancillary to the First Removal. As emphasized above, the fact that this is a Third Removal is a type of removal contemplated by Congress because Congress made it irrelevant whether this Third Removal stands alone or whether it is ancillary to the First or Second Removals.

54. Additionally, the second sentence of Section 1442(d)(1) does not apply because there is "[an]other basis for removal." Namely, the next basis for removal covered below

concerning 28 U.S.C. §§ 1331 (and the doctrine of complete preemption) & 1441.

Indeed, under the combined effect of both sentences of Section 1442(d)(1), had

Respondent not already removed the entire action in the First Removal, Respondent

could now still remove (and does remove) the entire action at this time because of

ODC's Third Subpoena. Respondent hereby includes this Third Removal based on

the Third Subpoena as providing additional grounds for the removal of the entire

action to this Court.

**Original Jurisdiction Exists Pursuant to the Federal Question Statute (28 U.S.C. § 1331) Under the Doctrine of Complete Preemption and Thus Civil Removal Jurisdiction Also Exists Pursuant to 28 U.S.C. § 1441.**

55. Disciplinary jurisdiction by the DCCA and its adjuncts over Respondent's conduct is

*not* self-executing (especially where Respondent did not appear, as relevant to the

Charges, to litigate before any local court of the District). Instead, a federal statute is

required *to even potentially* authorize such local disciplinary jurisdiction.

56. The federal statute in question, 28 U.S.C. § 530B(a) (emphasis added), provides as

follows: "An attorney for the Government shall be subject to State laws and rules, and

local Federal court rules, governing attorneys in each State where such attorney

engages in that attorney's duties, *to the same extent and in the same manner as other*

*attorneys in that State.*"

57. The problem for ODC is that *the District of Columbia is <u>not</u> a "State."* Hence, Section

530B(a) confers no authority on the DCCA and its adjuncts to try to discipline the

conduct of Respondent. Federal statutes ***sometimes deem the District to be treated as if it were a State,*** but there is no such special directive in Section 530B, or indeed anywhere in Chapter 31 of Title 28 of the United States Code (which collects statutes involving the Attorney General and DOJ). By contrast, and also under the canon of *expressio unius est exclusio alterius* (the expression of one alternative implies the exclusion of all others), the text of the first and primary removal statute invoked to support this Third Notice of Removal (and both the First and Second Notices of Removal) itself explicitly confers "deemed State" status on the District. *See* 28 U.S.C. §§ 1442(d)(5)-(6) & 1451(2). *See, e.g., TVA v. Hill*, 437 U.S. 153 (1978) (a grouping of hardship exceptions to the applicability of the Endangered Species Act was exclusive). But when one turns away from removal issues to the ***substantive issue*** of disciplinary authority, there is no "deemed State" status conferred on the District. Instead, under Section 530B(a), the disciplinary delegation ***occurs only to "States" full stop,*** whereas the grouping to which federal officer removal jurisdiction applies is a ***different grouping*** of "States" and deemed States, *i.e.,* States together with (1) the "District of Columbia," (2) "United States territories and insular possessions, and [(3)] Indian country." 28 U.S.C. § 1442(d)(5).

58. Congress thus knows how to deem the District a "State" when it wants to do so. It clearly wanted to do so for purposes of removal but, equally clearly, it did ***not*** want to do so as to the topic of attorney discipline. For Sections 1442(d)(5) and 530B(a)

cannot be read to apply to *interchangeable* groupings of jurisdictions granted disciplinary power over Justice Department attorneys. The language of the two statutes is too disparate to even attempt to do so.

59. Respondent incorporates herein by reference's his briefing in response to the motions to remand in the First and Second Removals and his briefing in support of consolidating those two removals—all of which comprehensively demonstrates that the plain language 28 U.S.C. 530B's simply does not apply to the District of Columbia.

60. For these reasons, the DCCA is entirely fenced out of the federal grant of authority to regulate Justice Department lawyers engaged in internal deliberations. Therefore, that area of regulation is, in short, completely preempted.

61. "In complete preemption a federal court finds that Congress desired to control the adjudication of the federal cause of action to such an extent that it did not just provide a defense to the application of state law; rather, it replaced state law with federal law and made it clear that the defendant has the ability to seek adjudication of the federal claim in a federal forum." Wright, Miller & Cooper, 14B FEDERAL PRACTICE & PROCEDURE § 3722.1 at 512 (3d ed. 1998). Here, the rationale for complete preemption is even stronger because regulating Justice Department lawyers is inherently a federal role—and not, in the absence of a clear delegation (as is certainly true here), a state role. Simply put, Section 530B(a) never textually delegates to the District any power

to discipline Justice Department Attorneys, especially when they are not interfacing with the local courts of the District. State/local law here was not displaced; it was never made applicable to District disciplinary regulation in the first place.

62. ODC relies on Section 530B(b), which grants rulemaking power concerning Section 530B to the Attorney General. A federal rule resulting from that delegation does exist and it does purport to *expand* Section 530B's reach to the District. *See* 28 C.F.R. § 77.2(i). But Respondent's position is that this rule is *ultra vires* in violation of Step One of *Chevron* because it attempts to vary the plain text of Section 530B(a), which agencies lack the power to do. *See Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 843 n.9 (1984). DOJ cannot by rulemaking alone give itself the power to make the statute apply District ethics laws to DOJ lawyers.

63. Additionally, Section 77.2 has an important caveat, which ***independently*** places this case beyond the jurisdiction of ODC, the DCCA, and the DCCA's other adjuncts: "Nor does the phrase include any jurisdiction that would ***not ordinarily apply*** its rules of ethical conduct to particular conduct or activity by the attorney." 28 C.F.R. § 77.2(j)(2). This provision carries out Section 530B(a)'s caveat that ethics regulation, even where it is delegated to the States (not the District), applies only ***"to the same extent and in the same manner as other attorneys in that State."***

64. Mr. Fox has conceded, in an email exchange undersigned counsel initiated to try to ascertain the proposed sanction he is seeking against Respondent, that this case is

not one in the ordinary course, being conducted "to the same extent and in the same manner" as other disciplinary matters ODC handles. This is because Mr. Fox recognizes that ***there has never been a case like this before*** (a key point Respondent's counsel has argued repeatedly to ODC, the Hearing Committee, the Board, and the DCCA). *See* First Removal (Case No. 1:22-mc-00096-RC), Exhibit D, Email from Phil Fox to Charles Burnham, *et al.* (Oct. 6, 2022) (emphasis added) ("I don't think there is ***any comparable conduct,*** which means this is something that I will need to dwell on."). If there is no comparable conduct, then the attempt to discipline such conduct is not a matter "ordinarily" brought up for District lawyer discipline and so it falls outside even an *ultra vires* regulation that tries to make the square peg of Section 530B's authorization to "State" disciplinary proceedings apply to the round hole of "District" disciplinary proceedings. Similarly, and even more importantly, the lack of comparable cases means that this disciplinary matter cannot be one where ODC is proceeding "***to the same extent and in the same manner as*** [it pursues discipline concerning] ***other attorneys in that State***" (even assuming, incorrectly but *arguendo*, that the District can function as a "State" under the statute). 28 U.S.C. § 530B(a) (emphasis added).[5]

---

[5] The fact that ODC admits that its case against Mr. Clark is unprecedented distinguishes it from cases where, for example, Assistant United States Attorneys ("AUSAs") have faced discipline. *See, e.g. In re Andrew J. Kline*, 11 A.3d 202 (D.C. 2015) (discipline case involving discovery violations by an AUSA). Without conceding that ODC can reach

65. 28 U.S.C. § 1441(a) provides as follows:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

66. As explained above, District disciplinary proceedings are criminal-civil hybrids. As such, Section 1441(a) applies here, for this proceeding is, at least in part, a "civil action."

67. Section 1451(2) deems the District to be a "State" "for purposes of this chapter" (*i.e.*, Chapter 89 of Title 28 of the United States Code). And Section 1441(a) is part of Chapter 89. As such, this in-part "civil action" is pending in "a State Court," within the meaning of Section 1441(a) as supplemented by Section 1451(2).

68. The District Court has original federal question jurisdiction over this in-part "civil action" because the attempted District lawyer discipline at issue here is completely preempted as it falls outside the authorization of Section 530B(a) (and Section 77.2(j)(2)).

69. The term "defendant" is not defined in Section 1441(a) but Respondent is clearly

---

such conduct under Section 530B (a question not presented here), we recognize that ODC does "ordinarily apply" its rules to attorneys who appear before D.C. courts. However, as the ODC has admitted, it does not "ordinarily apply" its rules of ethics to non-court, purely internal advice provided by high-ranking DOJ lawyers to their superiors up to and including the President of the United States. Thus, whether on the basis of a pure-text reading of Section 530B(a) or, even assuming the validity of Section 77.2(i), the Charges brought here are beyond ODC's powers.

placed by District law in a defensive posture as to the Charges being advanced by ODC, even though District procedural law refers to him by a different term.

## ODC, THE DCCA, BOARD, AND ANY HEARING COMMITTEE MAY NOT PROCEED FURTHER ON THIS MATTER NOW THAT REMOVAL HAS OCCURRED.

70. As noted above, this matter is a criminal-civil hybrid. As such, it must be governed by harmonizing the procedural removal statute for criminal actions (Section 1455) with the procedural removal statute for civil actions (Section 1446).

71. Section 1455(b)(3) provides that "The filing of a notice of removal of a criminal prosecution shall not prevent the State court in which such prosecution is pending from proceeding further, except that a judgment of conviction shall not be entered unless the prosecution is first remanded." 28 U.S.C. § 1455(b)(3). *See also* 28 U.S.C. § 1455(b)(5) (in situations where "the United States district court does not order the summary remand of such prosecution," and once the "district court determines that removal shall be permitted, it shall so notify the State court in which prosecution is pending, *which shall proceed no further*.") (emphasis added).

72. But Section 1446(d) provides that once notice of removal is filed as to a civil action with the clerk of the "State court" and notice is given to adverse parties "the State court shall proceed no further unless and until the case is remanded." 28 U.S.C. § 1446(d).

73. The only way to harmonize those two statutes, both of which apply to this removal, is for the State Court—here the *Deemed*-State Court (*i.e.,* the DCCA and its adjuncts)

to be precluded from proceeding further with the matter "unless and until the case is remanded." *See, e.g., United States v. Fausto*, 484 U.S. 439, 453 (1988) ("we must engage in the classic judicial task of reconciling many laws enacted over time, and getting them to make sense in combination") (cleaned up).

74. As described in the Second Removal, ODC violated the automatic stay of Section 1446(d) by filing its motion to enforce the Second Subpoena. In the Second Removal Respondent stated he would further notify the Court if the DCCA or any of its adjuncts attempt to proceed contrary to Section 1446(d). ODC has done so with the Third Subpoena, which prompts this Third Removal. ODC's action runs flatly contrary to the intent of the federal-officer removal statute, which is to shift the locus for adjudicating cases that might impinge upon federal officers' powers to an Article III court forum. ODC's wilful defiance of this Court's jurisdiction may prompt an as yet unknown number of additional future removals.

75. ODC compounds its defiance of this Court's jurisdiction by explicitly threatening to treat Respondent's refusal to acquiesce in its defiance as a matter in aggravation of any disciplinary sanction that may ultimately be imposed in this case. *See* Exh. 5. Respondent respectfully suggests that if there are to be any sanctions arising in connection with the Third Subpoena, they should run in the opposite direction.

**Post-Removal Procedural Matters in This Court**

76. Proceedings with respect to the Third Subpoena should be recognized as suspended

until the Court has first resolved threshold motions practice, especially on the topic

of removal jurisdiction and then on the topic of ODC's subject matter jurisdiction.

77. Indeed, we interpret the January 17, 2023 order by the DCCA as recognizing that

Respondent's prior removals (and thus this removal as well) is colorable, which is

why it has imposed an abeyance on litigating this matter outside of this Court. *See*

Exh. 14.

**Venue and Removal Under 28 U.S.C. § 1441(a)**

78. Venue is proper in this Court pursuant to 28 U.S.C. § 1446(a), as the United States

District Court for the District of Columbia is the District in which the State Court

Action was pending.

79. This matter is removable under 28 U.S.C. § 1441 as in-part a civil action over which

the United States District Court for the District of Columbia has original subject matter

jurisdiction under 28 U.S.C. § 1331 and the doctrine of complete preemption.

80. This matter is thus also removable under 28 U.S.C. § 1442 and § 1455 because the

Charges are in-part a criminal prosecution that is pending within another jurisdiction

(the DCCA), which also falls within the span of the United States District Court for

the District of Columbia.

**Effectuation of Removal**

81. Respondent hereby removes this quasi-prosecution case involving the Third

Subpoena to the United States District Court for the District of Columbia.

82. By filing this Notice of Removal, Respondent expressly consents to the removal.

83. Pursuant to 28 U.S.C. § 1446(a), copies of all pleadings, as well as copies of all process and other papers, from Third Subpoena forward, filed in the DCCA, are attached hereto as Exhibits 7, 10, and 14. All prior pleadings, process and other papers were attached to the First and Second Removals in this Court.

84. The allegations herein were true at the time the Deemed-State Court Action was commenced and remain true as of the date of filing of this Third Notice of Removal.

85. Undersigned counsel certifies that a notice of filing this removal, along with a copy of this Third Notice of Removal, will be promptly filed with the Board, which will give notice to its Hearing Committee. Respondent will also serve this filing on opposing counsel.

86. WHEREFORE, Respondent hereby removes this action to the United States District Court for the District of Columbia.

This 25th day of January, 2023.

Respectfully submitted,

/s/ *Charles Burnham*
Charles Burnham
DC Bar No. 1003464
Burnham and Gorokhov, PLLC
1424 K Street, NW
Suite 500
Washington DC 20005
(202) 386-6920
charles@burnhamgorokhov.com

/s/ *Harry W. MacDougald*
Harry W. MacDougald
Georgia Bar No. 463076
Caldwell, Carlson, Elliott & DeLoach LLP
Two Ravinia Drive, Suite 1600
Atlanta, Georgia 30346
(404) 843-1956
hmacdougald@ccedlaw.com
Admitted Pro Hac Vice in Case No. 1:22-mc-00096-RC

### CERTIFICATE OF SERVICE

I certify that a copy of the foregoing Third Notice of Removal (and its accompanying exhibits) was hereby filed on January 25, 2023, and that copies of the Third Notice of Removal were served on the District of Columbia Board of Professional Responsibility, which will give notice to the Chair of Hearing Committee Twelve, and on Disciplinary Counsel Hamilton P. Fox on the same date as well. I sign consistent with Federal Rule of Civil Procedure 11.

This 25th day of January, 2023.

*/s/ Charles Burnham*
Charles Burnham
D.C. Bar 1003464
*Attorney for Respondent*
BURNHAM & GOROKHOV, PLLC
1424 K Street NW, Suite 500
Washington, DC 20005
(202) 386-6920 (phone)
(202) 265-2173 (fax)
charles@burnhamgorokhov.com