# EXHIBIT 7

# SUBPOENA

## BOARD ON PROFESSIONAL RESPONSIBILITY
## DISTRICT OF COLUMBIA COURT OF APPEALS

NOTICE: THIS SUBPOENA IS ISSUED IN CONNECTION WITH A CONFIDENTIAL INVESTIGATION UNDER THE RULES PROMULGATED BY THIS COURT GOVERNING THE BAR OF THE DISTRICT OF COLUMBIA.

BREACH OF THE CONFIDENTIALITY OF THE INVESTIGATION WILL BE DEEMED AS CONTEMPT OF THIS COURT OR GROUNDS FOR DISCIPLINE UNDER THE AFOREMENTIONED RULES OF THIS COURT. *(Consultation with an attorney does not constitute such a breach.)*

*In the Matter of:*

Clark/Disciplinary Counsel

DISCIPLINARY DOCKET NO. 2021-D193

TO: Jeffrey B. Clark, Esquire, 8850 Western Hemlock Way, Lorton, VA 22079

YOU ARE HEREBY COMMANDED TO APPEAR at 515 5th Street, N.W., Building A, Room 117, Washington, D.C., 20001, at 9:30 o'clock a.m., on the 9th day of January 2023, as a witness in the above captioned matter. You are directed to bring with you Please see attachment to subpoena for description of documents requested.

and not depart the above premises without leave from the authority before whom you appeared.

FAILURE OF ANY PERSON WITHOUT ADEQUATE EXCUSE TO OBEY THIS SUBPOENA AS SERVED MAY BE DEEMED CONTEMPT OF THE DISTRICT OF COLUMBIA COURT OF APPEALS RULES GOVERNING THE BAR.

☑ Production & delivery of these documents will eliminate the need for a personal appearance.

DATE SUBPOENA ISSUED: 12/27/2022

☑ If you have any questions regarding this subpoena, please call 202-638-1501.

Hamilton P. Fox, III, Disciplinary Counsel

*Hamilton P. Fox, III*

| RETURN ON THIS SUBPOENA IS REQUIRED ON OR BEFORE THIS DATE: | |
|---|---|
| ☐ I hereby certify that I have personally served, or have executed as shown in "REMARKS," the above subpoena on the individual at the address below. | |
| Name and Title of Individual Served | Address (If different than shown above) |
| ☐ I hereby certify that, after diligent investigation, I am unable to locate the individual, company, corporation, etc., named in above subpoena for the reason(s) as shown in "REMARKS." | |
| Date(s) of Endeavor | Date and Time of Service |
| REMARKS | Signature and Title of Server |

## Super. Ct. Civ. R. 45(c) and (d)

(c) PROTECTING A PERSON SUBJECT TO A SUBPOENA; ENFORCEMENT.

  (1) *Avoiding Undue Burden or Expense; Sanctions*. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  (2) *Command to Produce Materials or Permit Inspection*.

    (A) *Appearance Not Required*. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for deposition, hearing, or trial.

    (B) *Objections*. A person commanded to produce documents, electronically stored information, or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If objection is made, the following rules apply:

      (i) At any time, on notice to the commanded person, the serving party may move the court for an order compelling production or inspection.

      (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  (3) *Quashing or Modifying a Subpoena*.

    (A) *When Required*. On timely motion, the court must quash or modify a subpoena that:

      (i) fails to allow reasonable time to comply;

      (ii) requires a person who is neither a party nor a party's officer to travel more than 25 miles from where that person resides, is employed, or regularly transacts business in person—except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place to the place of trial;

      (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

      (iv) subjects a person to undue burden.

      (v) *When Permitted*. To protect a person subject to or affected by a subpoena, the court may, on motion, quash or modify the subpoena if it requires: disclosing a trade secret or other confidential research, development, or commercial information;

      (vi) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

      (vii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 25 miles to attend trial.

    (B) *Specifying Conditions as an Alternative*. In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

      (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

      (ii) ensures that the subpoenaed person will be reasonably compensated.

(d) DUTIES IN RESPONDING TO A SUBPOENA.

  (1) *Producing Documents or Electronically Stored Information*. These procedures apply to producing documents or electronically stored information:

    (A) *Documents*. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

    (B) *Form for Producing Electronically Stored Information Not Specified*. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

    (C) *Electronically Stored Information Produced in Only One Form*. The person responding need not produce the same electronically stored information in more than one form.

    (D) *Inaccessible Electronically Stored Information*. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  (2) *Claiming Privilege or Protection*.

    (A) *Information Withheld*. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation materials must:

      (i) expressly make the claim; and

      (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

    (B) *Information Produced*. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

# ATTACHMENT TO SUBPOENA

**Clark/Disciplinary Counsel**
**Disciplinary Docket No. 2021-D193**

**Date of Subpoena:  December 27, 2022**
**Due date of Subpoena:  January 9, 2023**

Produce complete and unredacted copies of all 331 drafts of the autobiography that you were, or are, writing or contemplating writing, which is described in the *Memorandum Opinion* entered by U.S. District Court Chief Judge Beryl A. Howell on September 27, 2022, in case number 22-GJ-28, a copy of which is attached for reference.

**DISCIPLINARY COUNSEL WILL ACCEPT DELIVERY OF RESPONSIVE DOCUMENTS TO OUR OFFICE WITHOUT THE NEED FOR A PERSONAL APPEARANCE.  PLEASE CONTACT OUR OFFICE TO ARRANGE FOR ELECTRONIC TRANSMISSION OF ALL FILES.**

Case 1:22-gj-00028-BAH *SEALED* Document 329 Filed 10/31/2022 Page 14 of 123

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH TWO ACCOUNTS STORED AT PREMISES CONTROLLED BY GOOGLE LLC, ONE ACCOUNT STORED AT PREMISES CONTROLLED BY MICROSOFT CORPORATION, AND ONE ACCOUNT STORED AT PREMISES CONTROLLED BY CHAPMAN UNIVERSITY, PURSUANT TO 18 U.S.C. § 2703 FOR INVESTIGATION OF VIOLATIONS OF ▓▓▓▓▓▓▓▓ | Case No. 22-GJ-28<br><br>Chief Judge Beryl A. Howell<br><br>▓▓▓▓▓▓▓ **WITH REDACTIONS** |

## MEMORANDUM OPINION

In compliance with a court-ordered filter protocol approved on July 21, 2022, *see* Order Regarding Filter Protocol ("Filter Protocol (Clark Gmail Account)") ▓▓▓▓▓▓▓ ECF No. 10, a filter team has been reviewing information from the Gmail account with the address jeffrey.b.clark@gmail.com ("Clark Gmail Account"), which is registered to Jeffrey Clark, who previously served as Acting Assistant Attorney General for the Civil Division of the Department of Justice. The contents of and associated information from the Clark Gmail Account were obtained pursuant to a court-ordered search warrant approved on June 24, 2022 and executed on June 27, 2022, *see* Issued Search Warrant, ▓▓▓▓▓▓▓ ECF No. 3; Search and Seizure Warrant Return, Case No. 22-sc-1678, ECF No. 7. The purpose of the filter team's review is to identify and segregate from material disclosed to the investigative team any material in the Clark Gmail Account that is attorney-client privileged and work-product protected. *See* Filter Protocol (Clark Gmail Account) § (b)(i)-(ii). As part of that process, on September 8, 2022, the filter team filed, *ex parte* and under seal, the instant motion to release to the investigative team certain documents—namely, 331 iterative versions of what appears to be an autobiography outline auto-

1

saved to the Clark Google Account. Gov't Filter Team's *Ex Parte* Motion to Release Documents ("Gov't's Mot.") at 3, ECF No. 11. The same motion requested permission for limited disclosure of the motion and its attachments to Clark's counsel, which request was granted the same day, along with issuance of a scheduling order that adopted a timeline designed to avoid further delay for briefing on the motion to disclose the materials at issue to the investigative team, which briefing, including a supplemental response submitted by the filter team in response to the Court's *ex parte* query, Minute Order (Sept. 21, 2022); Gov't's Suppl. Brief Supp. Mot. to Release Documents ("Gov't's Suppl. Mem."), ECF No. 15, was completed on September 23, 2022.

Upon consideration of the government's motion, as well as Clark's Response to Government's Motion to Release Documents and Request for Scheduling Order ("Clark's Opp'n"), ECF No. 13, and the government's reply ("Gov't's Reply"), ECF No. 14, the Court finds that the 331 documents are not protected by the work-product doctrine or the attorney-client privilege and thus may be disclosed to the investigative team. Accordingly, as further explained below, the government's motion for the release of documents to the investigative team is **GRANTED**.

I. **BACKGROUND**

A. **Files at Issue**

The government filter team seeks to disclose to the investigative team a total of 331 files largely consisting of auto-saved drafts of the same ultimate document: the outline of an autobiography that Clark apparently contemplated writing. *See* Clark's Opp'n at 1–5 (describing the drafts as a "single document . . . electronically 'auto saved' many, many times").[1] The

---

[1] Clark devotes half of his seven-and-a-half-page brief to highlighting that all of the files at issue are a "single Note" auto-saved through the Notes app on Clark's phone rather than created as emails, Clark's Opp'n at 1–

2

documents take the form of a book outline, including a "[p]rologue," "[i]ntroduction," nine numbered sections that chronologically narrate Clark's life, and a "[c]onclusion." Gov't's Mot., Ex. 6, Document Drafted 10/14/2021 at 11:27 ("Oct. 14, 2021 Outline Draft") at 27–31, ECF No. 11. The substance, too, reveals the documents' intended purpose as a book outline. Clark calls the documents an "outline" in introductory text, and writes that the final chapter will cover "[f]uture [e]vents (ie from October 2021 to whenever text close out date would be)." *Id.* at 27, 30.

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████.[2] The prologue describes Clark's involvement in *Bush v. Gore*, stating that he "never thought [he'd] have a bird's eye view of a second deeply contested presidential election," but that he "would be wrong." Oct. 14, 2021 Outline Draft at 27. The introduction then skips forward to January 2021, when the outline indicated Clark learned the New York Times was writing a story about how he "headed up a plot to take over as Acting AG and 'subvert democracy.'" *Id.* The numbered chapters trace Clark's life from "growing up

---

5. The fact that the files reflect auto-saved, iterative versions of the same document is undisputed, Gov't's Mot. at 3–4, and whether the files were composed in the Notes app or an open email—in Clark's verbiage, the files' "native habitat," Clark's Opp'n at 4—is irrelevant to whether they are deserving of protection from disclosure as privileged.

[2] The filter team "may [] segregate and not disclose to the investigation team any material that is unambiguously not responsive to the search warrant," pursuant to the Filter Protocol. Filter Protocol (Clark Gmail Account) at § (d)(i).

3

deplorable in Philadelphia," to his career as "a young DAAG" in the Bush administration, to his work as Assistant Attorney General for the Environment and Natural Resources Division under the Trump administration. *Id.* at 27–28. The following six chapters outline his perspective on the 2020 presidential election results ("[d]on't believe it but I've got a day job") and role in the election's aftermath, including a description of his creation of the ultimately never-sent "letter to Georgia legislature" regarding potential election fraud and Trump's reaction to it ("good letter"). *Id.* at 28–29. The outline also provides a detailed description of a January 3, 2021 meeting attended by President Trump, Acting U.S. Attorney General Jeffrey Rosen, Acting U.S. Deputy Attorney General Richard Donoghue, and Clark in the White House, in which the officials discussed Clark's draft letter and Rosen's potential removal. *Id.*

All drafts of the outline contain text in the "Subject" line, repeated as the first line in the body of the outline, stating that "[n]one of this outline reveals privileged information," *see* Gov't's Mot., Ex. 11, Index of Disputed Documents at 39–62, ECF No. 11. At some point on October 11, 2021, Clark edited this line so that it read in many drafts saved that day: "[n]one of this outline reveals privileged information, though some of it relies on information disclosed in testimony from other officials they never should have given." *Id.* The final two drafts contain the same text in both the "Subject" line and repeated in the first line of the body of the outline, but with the addition of the line: "However this is attorney work product." *Id.* at 39. The initial 329 drafts were all auto-saved over the course of October 11, 2021, with the final two drafts saved on October 14, 2021. *See id.* at 39–62.

### B. Applicable Filter Protocol

This Court initially approved a filter protocol with respect to the review of certain email accounts of Jeffrey Clark and others, following an iterative process that included three separate hearings, on May 26, 2022. *See* Filter Protocol Mem. & Order ("Filter Protocol (Clark Outlook

4

Case 1:22-gj-00028-BAH *SEALED* Document 32 Filed 10/25/22 Page 5 of 13

Account and Others)") at 1–3, 22-sc-1096, ECF No. 10.[3] This filter protocol affords robust protections to any materials derived from the subjects' email accounts that are protected or possible protected by the attorney-client privilege or work-product doctrine. After potentially protected materials are identified and segregated, the protocol provides that the investigation team may not learn about nor be granted access to any such materials unless the filter team seeks review of those materials by and approval from the Court, either *ex parte* without informing the potential privilege holder's counsel, or after conferral with the potential privilege holder's counsel fails to reach a resolution. *Id.* at § (e)(vi).

This filter protocol was later amended with respect to Clark and others to provide for detailed procedures for disclosing certain material to any potential privilege holder after separate search warrants on Clark and others, and Clark's residence were executed, alerting these persons to the government's investigation. *See* Gov't's Mot. Regarding Filter Protocol at 1, ███, ECF No. 13.[4] Under the amended procedures, the government filter team may provide to the potential privilege holder material determined to be unprotected by privilege. The potential privilege holder must then raise any objections to the materials' disclosure to the investigative team within seven days, and disputed materials may not be disclosed to the investigative team unless the government filter team gains approval from the Court. *See* Order Regarding Filter Protocol ("Amended Filter Protocol (Clark Outlook Account and Others)") at § (d)(vi)(1)–(4), ███, ECF No. 14.

---

[3] ███

[4] This amended filter protocol had already been adopted by this Court in the search warrant issued on July 12, 2022, to search the contents of the electronic devices seized from locations including Clark's residence. *See* Issued Search Warrant at 7–11, ███ ECF No. 3.

With respect to the Clark Gmail Account from which the presently disputed materials were seized, this Court adopted the same amended filter protocol already in place for the search warrants targeting Clark's devices and Outlook account. *See generally* Filter Protocol (Clark Gmail Account). In accordance with the protocol, the filter team conferred with counsel for Clark before disclosing to the investigative team potentially protected material that the filter team determined were not protected. *See* Gov't's Mot. at 3–5. In a letter dated August 17, 2022, the filter team notified Clark's counsel of the files currently in dispute, providing Clark seven days to object before the files would be released to the investigative team. *See* Gov't's Mot., Ex. 7, Ltr. from Filter Team Assistant U.S. Attorney ("Filter Team") to Clark's counsel, Charles Burnham (Aug. 17, 2022), ECF No. 11. On August 25, 2022, Clark's counsel objected to the release of the documents on the basis of attorney work product, also noting that Clark did not waive any objections to the legal sufficiency of the filter protocol. *See* Gov't's Mot., Ex. 8, Ltr. from Clark's counsel to Filter Team (Aug. 25, 2022) ("Aug. 25, 2022 Clark's Counsel Letter"), ECF No. 11.[5] The filter team provided a more detailed explanation of its position to Clark's counsel on August 29, 2022, prompting a succinct reply, without any substantive response: "We object." *See* Gov't's Mot., Ex. 9, Ltr. from Filter Team to Clark's counsel (Aug. 29, 2022), ECF No. 11; Gov't's Mot., Ex. 10, Email from Clark's counsel to Filter Team (Aug. 29, 2022), ECF

---

[5] Although Clark does not argue in his submission before this Court that the filter protocol was insufficient, his counsel has asserted to the filter team that "review [of] the seized materials should be conducted via adversarial proceedings before a court, or by a Special Master." Aug. 25, 2022 Clark's Counsel Letter at 1. Clark's counsel's call for adversarial proceedings on issues related to a grand jury investigation runs contrary to the Supreme Court's guidance to "avoid[] minitrials on peripheral matters." *United States v. R. Enters., Inc.*, 498 U.S. 292, 300 (1991). Grand jury proceedings eschew many of the "technical procedural and evidentiary rules governing the conduct of criminal trials" in order to free the proceedings of delay and ensure their "indispensable secrecy." *Id.* at 298–99 (quoting *United States v. Calandra*, 414 U.S. 338, 343 (1974); then quoting *United States v. Johnson*, 319 U.S. 503, 513 (1943)). Certainly, claims of privilege remain applicable in grand jury proceedings, but the method by which potential privilege claims are evaluated may be adapted to the particular need for expeditious and secret review of relevant evidence of criminal wrongdoing by the grand jury. *See In re Sealed Case,* 121 F.3d 729, 756–57 (D.C. Cir. 1997). To this end, the filter protocol relaxes the requirements of secrecy for grand jury proceedings, generally required by Federal Rule of Criminal Procedure 6(e), and allows for limited adversarial proceedings in the course of a grand jury investigation, but this reflects an accommodation—not an entitlement.

6

No. 11. The conferral process having reached an impasse, the filter team filed the instant motion pursuant to § (d)(vi)(3) of the filter protocol.

## II. DISCUSSION

Following review of the general legal principles governing the attorney-client privilege and work-product doctrine, the applicability of these legal shields to bar disclosure of the materials from the Clark Gmail Account at issue here are addressed in turn, followed by a brief discussion of Clark's procedural request regarding the order of future briefing.

### A. Work-Product Doctrine and Attorney-Client Privilege Generally

The work-product doctrine "shields materials 'prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative.'" *Judicial Watch, Inc. v. Dep't of Justice*, 432 F.3d 366, 369 (D.C. Cir. 2005) (quoting FED. R. CIV. P. 26(b)(3)). "At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *United States v. Nobles*, 422 U.S. 225, 238 (1975). The doctrine emerged as a common law privilege in the civil litigation context, *see Hickman v. Taylor*, 329 U.S. 495 (1947), and has been extended to apply to criminal matters, *see Nobles*, 422 U.S. at 236–38, with codification in both the federal civil and criminal procedural rules, *see* FED. R. CIV. P. 26(b)(3) and FED. R. CRIM. P. 16(b)(2). "While the 'work product' may be, and often is, that of an attorney, the concept of 'work product' is not confined to information or materials gathered or assembled by a lawyer." *Hertzberg v. Veneman*, 273 F. Supp. 2d 67, 76 (D.D.C. 2003) (quoting *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 603 (8th Cir. 1977)). The "key" element of the doctrine is that documents are only protected if they were prepared in anticipation of litigation, and, importantly, "the proponent of the work-product protection [] bears the burden of demonstrating that the

7

prospect of litigation was an independent, legitimate, and genuine purpose for the document's creation." *United States v. ISS Marine Servs., Inc.*, 905 F. Supp. 2d 121, 134 (D.D.C. 2012).

The attorney-client privilege, for its part, "is the oldest of the privileges for confidential communications known to the common law." *United States v. Jicarilla Apache Nation*, 564 U.S. 162, 169 (2011) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). As the Supreme Court explained, "[b]y assuring confidentiality, the privilege encourages clients to make 'full and frank' disclosures to their attorneys, who are then better able to provide candid advice and effective representation," and "[t]his, in turn, serves 'broader public interests in the observance of law and administration of justice.'" *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 108 (2009) (quoting *Upjohn Co.*, 449 U.S. at 389). Thus, the privilege covers only a communication "between attorney and client if that communication was made for the purpose of obtaining or providing legal advice to the client." *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 757 (D.C. Cir. 2014) (Kavanaugh, J.); *see also In re Lindsey*, 158 F.3d 1263, 1270 (D.C. Cir. 1998) ("[Attorney-client] privilege applies only if the person to whom the communication was made is 'a member of the bar of a court' who 'in connection with th[e] communication is acting as a lawyer' and the communication was made 'for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding.'" (citing *In re Sealed Case*, 737 F.2d 94, 98–99 (D.C. Cir. 1984))).

### B.   Clark's Privilege and Work-Product Claims

Clark appears to claim both the work-product protection and attorney-client privilege, contending that the disputed documents are "privileged/protected by the work product doctrine," *see* Clark's Opp'n at 1, in an approach that can best be described as throwing spaghetti at the wall to see what sticks. None of Clark's arguments are successful, however. His arguments—based solely on conclusory factual statements in briefing without any support from sworn

8

declarations from him or current or former counsel to carry his burden here—cast two alternative realities: either (1) Clark represented himself in preparing for anticipated litigation, and the documents constituted his own work product, Clark's Opp'n at 5–6 & 6 n.2, or (2) he was represented by then-counsel Robert Driscoll, and the substance of the documents may have been shared with counsel. *Id.* at 6–7. Although both Clark and the filter team conflate the work-product doctrine and attorney-client privilege in their papers, the applicability of each basis for protection from disclosure is addressed *seriatim*.

### 1. *Work-Product Doctrine*

Three days after completing the outline reflected in the instant files, Clark returned to the document to add to the "Subject" line and introductory text—which already disclaimed that "[n]one of this outline reveals privileged information"—the advisory that "this is attorney work product." Oct. 14, 2021 Outline Draft; *see also* Clark's Opp'n at 3 (noting that "the final two versions are marked 'work product'"). In support of this "attorney work product" assertion, Clark contends that he was able to "prepare work-product-protected notes for his own defense," and "at all times, Mr. Clark has acted as his own counsel in the various matters on the Hill and elsewhere." Clark's Opp'n at 6 n.2. Specifically, Clark argues that he could have prepared the documents "about the upcoming legal challenges being anticipated" after the House Select Committee to Investigate the January 6, 2021 Attack on the Capitol requested that Clark provide testimony about the Justice Department's investigations of alleged voter fraud related to the 2020 election results. Clark's Opp'n at 5–6; *see also* Aug. 25, 2022 Clark's Counsel Letter (asserting that Clark was "on notice" of an investigation by the Department of Justice Inspector General's Office, proceedings before the Senate Judiciary Committee, and an anticipated subpoena from the House Select Committee).

9

On the other hand, the filter team contends that the files do not enjoy work-product protection because they comprise "the outline of a memoir," without any indication that Clark drafted the outline for a litigation-related purpose. Gov't's Reply at 2–3.

Putting aside the questions of whether Clark was *pro se* at the time of the documents' creation, Clark has failed to meet his burden to prove that these drafts of an autobiography outline meet the prerequisite for the protection he claims of being "prepared in anticipation of litigation." *United States v. Deloitte LLP*, 610 F.3d 129, 136 (D.C. Cir. 2010); *see also United States v. Williams Cos.*, 562 F.3d 387, 393 (D.C. Cir. 2009) (holding the same in the context of a criminal case).[6] The D.C. Circuit applies the "because of" test, "asking 'whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.'" *Deloitte,* 610 F.3d at 137 (quoting *In re Sealed Case*, 146 F.3d 881, 884 (D.C. Cir. 1998)). "Where a document would have been created 'in substantially similar form' regardless of the litigation, work product protection is not available." *Fed. Trade Comm'n v. Boehringer Ingelheim Pharms., Inc.*, 778 F.3d 142, 149 (D.C. Cir. 2015). Anticipated litigation in this context includes "adversarial administrative matters, settlement negotiations, and the *avoidance* of anticipated litigation." *Gen. Elec. Co. v. Johnson*, No. 00-cv-2855, 2006 WL 2616187, at *11 (D.D.C. Sept. 12, 2006) (emphasis in original). Whether a congressional investigation, as Clark cites here with reference to the House Select Committee hearings, can constitute such an adversary proceeding is unclear. *See, e.g., In re Grand Jury Proceedings*, 5 F. Supp. 2d 21, 39 (D.D.C. 1998), *aff'd in part, rev'd*

---

[6] For this reason, Clark's reliance on *Moore v. Kingsbrook Jewish Med. Ctr.*, No. 11-cv-3552, 2012 WL 1078000 (E.D.N.Y. March 30, 2012) is inapposite. In *Moore*, the *pro se* party claimed work-product protection over notes that she took during a deposition that were "clearly prepared in anticipation of litigation or trial" because these were her "'personal notes' that reflected her own mental impressions of the deposition and the litigation." *Id.* at *8. The dispositive issue is whether the documents were created in anticipation of litigation—not by whom they were written.

10

*in part on other grounds sub nom. In re Lindsey,* 158 F.3d 1263 (D.C. Cir. 1998) (avoiding a similar question in the context of an Office of Independent Counsel probe where the attorney's client, the White House, was not being investigated). Although materials prepared by non-attorneys can enjoy the work-product protection, "the degree to which counsel is involved in creating the document bears directly on whether the document was prepared in anticipation of litigation." *ISS Marine Servs.,* 905 F. Supp. 2d at 134.

To be sure, Clark penned the autobiography outline in an atmosphere charged with news that congressional committees' investigations into the January 6, 2021 Capitol attack and other efforts to overturn the 2020 election were increasingly focusing on his role. On October 4, 2021, the House Select Committee's Chief Investigative Counsel Tim Heaphy wrote to Clark's then-counsel that the Select Committee intended to speak with Clark "ideally in the next couple of weeks." Clark's Opp'n, Ex. 2, Email from Heaphy to Clark's then-counsel Robert Driscoll (Oct. 4, 2021) at 1, ECF No. 13-2. Three days later, on October 7, 2021, the Senate Judiciary Committee published a report on its parallel investigation into attempts to subvert the presidential election that featured Clark's role prominently, finding that "[a]fter personally meeting with Trump, Jeffrey Bossert Clark pushed Rosen and Donoghue to assist Trump's election subversion scheme." SENATE COMMITTEE ON THE JUDICIARY, SUBVERTING JUSTICE: HOW THE FORMER PRESIDENT AND HIS ALLIES PRESSURED DOJ TO OVERTURN THE 2020 ELECTION at 3–4 (2021), https://www.judiciary.senate.gov/imo/media/doc/Interim%20Staff%20Report%20FINAL.pdf. Four days later, Clark penned the book outline drafts currently in dispute. Then, on October 13, 2021, the House Select Committee issued a subpoena for Clark's testimony and records. *See* Luke Broadwater, *Jan. 6 Panel Subpoenas Jeffrey Clark, Former Justice Dept. Official,* N.Y.

11

TIMES (Oct. 13, 2021), https://www.nytimes.com/2021/10/13/us/politics/jeffrey-clark-subpoena.html. The following day, Clark edited the outline to add the tag-on line that it was protected by the attorney work-product rule.

Even assuming the congressional investigations constituted anticipated litigation, Clark fails to meet his burden as to the second, "motivational element" of this inquiry, which "demands that the document at issue be prepared or obtained *because of* the prospect of litigation." *In re Veiga*, 746 F. Supp. 2d 27, 35 (D.D.C. 2010). Clark contends that, as an attorney representing himself, the outline was created to "captur[e] his own mental impressions, legal strategy, and related notes about the upcoming legal challenges," Clark's Opp'n at 5, but these work-product buzzwords cannot be reasonably applied to the outline before this Court, which is almost entirely composed of retrospective accounts of Clark's past experiences stretching from his childhood to the present. The outline's "conclusion" does not contain thoughts or legal strategies related to the congressional committee investigations, but rather a promise to "resist communism" and work on "Covid litigation and against wokeism." Oct. 14, 2021 Outline Draft at 31. Although the outline references the ongoing congressional investigations, it does so in the context of the book's overall narrative, in a chapter Clark titled "Re-Rising Action." The outline of this chapter is comprised of skeletal bullet points, such as "J6 Select Committee established," "Rosen, Donoghue, and Hovakimian rush in to testify," and "I continue to stand on privileges preventing me from testifying." *Id.* at 30. Clark's bare assertion of the work product doctrine in his outline and briefing is insufficient to carry his burden of proving that he prepared this outline *because of* the congressional investigations.

12

### 2. *Attorney-Client Privilege*

Clark alternatively argues that he was represented by counsel at the time he drafted the outline, and the outline is therefore protected by the attorney-client privilege. He contends that "an outline of what a client wishes to discuss with one's counsel—and which is subsequently discussed with one's counsel" is privileged. Clark's Opp'n at 6 (quoting *Hicks v. Bush*, 452 F. Supp. 2d 88, 101 n.10 (D.D.C. 2006) (emphasis omitted)). Further, he asserts, "many attorneys have a practice of even requesting that clients provide autobiographical information for use in the representation." *Id.*

Clark fails to demonstrate that the outline is attorney-client privileged, however, because he never argues before this Court—let alone provides any sworn declaration—that the outline was *in fact* created to guide a conversation with counsel, or at the request of counsel. Nor does Clark argue that he shared the outline with counsel.[7] To the contrary, he claimed to be "puzzled as to why the Filter Team stresses that there was no evidence Mr. Clark sent the note in question to his counsel." Clark's Opp'n at 6 n.2. Such puzzlement would be resolved, however, with a closer reading of the case he quotes, which states in the preceding sentence that "[a] question recently answered in the negative by the Second Circuit is whether notes intended for an attorney are privileged if their content has not yet been communicated to the attorney. The privilege

---

[7] Clark's counsel asserted in a letter to the filter team that the "substance of the documents was later communicated to counsel," Aug. 25, 2022 Clark's Counsel Letter, but avoids repeating that assertion in his opposition to the government's motion. Clark's brief notably avoids making many factual assertions at all, instead arguing legal hypotheticals that may or may not apply to the facts at hand. *See, e.g.,* Clark's Opp'n at 5 (describing Clark as "entirely capable of preparing a document capturing his own mental impressions, legal strategy, and related notes about the upcoming legal challenges," without stating that Clark did in fact prepare the drafts for this purpose); *id.* at 6 (noting that "many attorneys have a practice of even requesting that clients provide autobiographical information" without arguing that Clark's counsel actually did so); *id.* (quoting a case in which notes of what a client wished to discuss—and then did discuss—with her counsel were protected by the privilege, without asserting that Clark created the drafts with the later-fulfilled intention of sharing them with counsel). That the opposition brief elided any firm factual assertion about Clark's intended purpose in writing the drafts—even while making legal arguments that depended on such facts being true—raises concern about any good faith basis Clark has for claiming protection under the attorney-client privilege or the work-product doctrine.

13

requires an attorney-client *communication*." *Hicks*, 452 F. Supp. 2d at 101 n.10. *See also United States v. DeFonte*, 441 F.3d 92, 95–96 (2d Cir. 2006) (holding that "central to the finding of privilege . . . is the fact that the notes were communicated by the client to the attorney"). Clark failed to show that his outline drafts were so communicated.

Clark's claim that the outline drafts are privileged fails for the second, related reason that the Clark has not demonstrated that the drafts were "made for the purpose of obtaining or providing legal advice." *Fed. Trade Comm'n v. Boehringer Ingelheim Pharms., Inc.*, 892 F.3d 1264, 1267 (D.C. Cir. 2018). Clark argued that documents resembling autobiographies may hypothetically be shared with counsel for the purposes of "mitigation, establishing intent, or general understanding of a client's life situation and goals," Clark's Opp'n at 6, but does not actually argue that he shared the outline drafts with his then-counsel for any of those reasons. Nor does the nature of the outline drafts indicate that they were designed with the purpose of seeking legal advice; not only do the drafts expressly disclaim that the "outline reveals privileged information," they also fail to list any questions requiring the legal advice of counsel. Instead, the drafts outline a book—not a contemplated discussion with counsel in which Clark may have sought legal advice.

### C.   Clark's Requested Briefing Schedule

Finally, Clark contends that, because he bears the burden to support any assertions of privilege, he should be permitted to "submit a brief in support of his privilege assertions followed by a response from the government and a reply from Respondent," Clark's Opp'n at 7. Clark is correct that in typical privilege battles, the privilege proponent tends to be the movant, but his argument is a red herring because Clark was given a full opportunity to support his position in his opposition to the government's motion. Clark's ability to have the last word is irrelevant to the question of whether he sustained his burden. Further, if the filter team had

14

raised any arguments for the first time in its reply—which Clark does not argue, because the filter team did not—Clark could have requested leave to file a surreply—which Clark did not—to cure any unfairness that the ordering of the briefing might have created. *See Awan v. U.S. Dep't of Justice*, No. 10-cv-1100, 2011 WL 2836541, at *1 (D.D.C. July 13, 2011).

### III. CONCLUSION

The 331 drafts of an autobiography outline that Clark drafted in mid-October 2021 are neither privileged nor protected by the work-product doctrine, because Clark failed to sustain his burden of showing that the drafts were communicated with counsel in pursuit of legal advice, or that the drafts were written because of the congressional investigations related to Clark. Instead, the files were clearly designed to outline an autobiographical book, tracing Clark's life from childhood to his future hopes for the country. The filter team may disclose these 331 drafts of an autobiography outline seized from the Clark Gmail Account to the investigative team.

An order reflecting the conclusion reached in this Memorandum Opinion will be filed contemporaneously. In addition, the filter team is permitted to disclose the accompanying order to Clark's counsel and is directed to review this Memorandum Opinion promptly for any proposed redactions that may be necessary before disclosure of the same to Clark's counsel.

**SO ORDERED**.

Date: September 27, 2022

*Beryl A. Howell*

BERYL A. HOWELL
Chief Judge

15