IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE: JEFFREY B. CLARK, | |
| A member of the Bar of the District of Columbia Court of Appeals (Bar No. 455315) | Case No. 1:23-mc-00007-RC<br>Case No. 1:22-mc-00096-RC<br>Case No. 1:22-mc-00117-RC |

## REPLY IN SUPPORT OF MOTION
## FOR STAY PENDING APPEAL

The Office of Disciplinary Counsel ("ODC") opposes Jeffrey B. Clark's Motion for Stay on grounds that cannot be reconciled with the plain language of the federal officer removal statutes or with the obvious import of a more-than-a-century-old line of Supreme Court decisions on federal officer removal, the most recent of which is *BP plc. v. Mayor & City Council of Baltimore*, 141 S. Ct. 1532 (2021).

## I.   OVERVIEW OF ODC'S DEFECTIVE ARGUMENTS

ODC's principal argument is antecedent to the traditional four-factor test for stays pending appeal, *i.e.,* that all state/local bar disciplinary proceedings are entirely exempt from the federal officer removal statute, 28 U.S.C. § 1442(a), because they are neither (1) "civil actions" nor (2) "criminal prosecutions" and (3) they are not "commenced in a State court." So sure is ODC of this set of antecedent claims that its argument that Mr. Clark cannot meet the four-factor test for stays pending appeal is made only in the alternative.

This Court adopted the first two elements of ODC's position in its June 8, 2023 rulings—that D.C. Bar disciplinary proceedings are neither "civil actions" nor "criminal

prosecutions."[1] There is a substantial disagreement on this point, including in the only precedent from a Court of Appeals. Hence, on that basis especially, we urge this Court to grant the stay pending appeal so that the D.C. Circuit can decide for itself (without putting Mr. Clark through a two-track fight with one foot in Article I forums and another in the D.C. Circuit) whether it wishes to create a circuit split with *Kolibash v. Committee on Legal Ethics of the West Virginia Bar*, 872 F.2d 571 (4th Cir. 1989) (holding a U.S. Attorney had properly removed West Virginia bar disciplinary proceedings against him).

On the theory that the Board of Professional Responsibility and Hearing Committee 12 are not "courts," or parts of a court, ODC argues it is not bound by the unambiguous command of 28 U.S.C. § 1446(d) that "***the State court shall proceed no further unless and until the case is remanded***" (emphasis added). *Contrast* Rules

---

[1] The last element—the notion that the local process involving the D.C. Bar's assigned Hearing Committee (#12) and the Board of Professional Responsibility ("Board") are not "courts"—is a new argument that ODC never made before and that this Court did not reach in its June 8 rulings. *See* Exhibit 1, Hearing Committee 12 Order (July 28, 2023) ("Based on our review of Disciplinary Counsel's motion to remand, it does not appear that it raised this argument with the District Court."). The Court noted in its June 8 Slip Op. at 24, n.6, that the disciplinary processes began in an indisputable court, the D.C. Court of Appeals ("DCCA"), but one that this Court suggested might not be a "court" for purposes of removal in light of the definition of "State court" in 28 U.S.C. § 1442(d)(6). ODC only began making its new argument after the Hearing Committee 12 Chair argued in a July 5, 2023 Order that the Hearing Committee was not a court. *See* Dkt #27-1 at 5 n.1. Thus, this last element of ODC's arguments should be ignored. No stay should be denied based on a new waived/forfeited argument never made before reaching the stay stage. We nevertheless rebut it below out of an abundance of caution, along with this Court's suggestion in footnote 6 that the DCCA is the wrong sort of court to remove from.

Governing D.C. Bar, Rule XI § 4(e)(4) [hereafter D.C. Bar Rules]. And Rule XI's Section 4(e)(4) makes clear that these bodies are instrumentalities of a court, the DCCA.

ODC's argument that compliance with the mailing requirement Section 1447(c) was impossible because there is no "State court" (or D.C.) clerk to receive it cannot withstand scrutiny. ODC pretends as if no docket in the Article I forums exists and thus that there is no official system for filing litigation documents, leaving each party to keep its own files. This is balderdash, which ODC attempts to support with an affidavit from one of its lawyers (Mr. Metzler) filed July 12, 2023. Mr. Metzler states that he told one of the employees of this Court's Clerk's Office that Hearing Committee 12 had no clerk, inducing the clerk to agree it was impossible to comply with Section 1447(c).[2] In inducing agreement with the hypothesized impossibility, Mr. Metzler does not appear to have informed the employee with whom he spoke that in fact, D.C. Bar Rule XI § 7(4) requires the Executive Attorney "[t]o maintain records of proceedings before Hearing Committees, the Board, and the Court," or that the parties submit their filings to that office and receive file-stamped copies back from that office, as the record transmitted with the Notice of Removal demonstrates. *See* Dkt. # 1-1 (Docket Sheet from disciplinary

---

[2] *See* Dkt. #27-1 at Exh. 20, 3-4 (¶¶ 8-10) (Metzler Aff. (July 12, 2023); *id.* at ¶¶ 9-10 ("To the best of my recollection, [the employee in this Court's Clerk's Office] said something like: '*because like you said, there is no court clerk*, so we would treat it like an agency case.' To confirm my understanding, I asked the clerk whether, when a case is purportedly removed from an agency, there is no remand notation on the docket because there is no court clerk. She agreed.") (emphasis added).

proceedings) *and* Exhibits at Dkt. # 1-2 et seq; *see also* Dkt. # 27-1, Exh. 22 (Lodged Respondent's Motion to Disregard ODC Affidavit as Legally Deficient and Thus Irrelevant (July 13, 2023) (setting out all of the affidavit's defects)). ODC cannot try to replace its divot of failing to ask this Court's Clerk to mail a copy of the certified remand order by feeding misleading information to the employees of the Court.[3]

ODC's alternative arguments on the four-factor discretionary stay test also fail. On the merits, ODC's cramped reading of the extremely broad scope of actions removable under Section 1442 cannot withstand scrutiny. Section 1442 is not a "round hole" into which the "square peg" of a disciplinary action must be fit, as ODC argues, *see* ODC Stay Opp. at 2. No, Section 1442 is a universal socket grip designed to protect federal officers and interests as to any type of action. The tension between civil and criminal removal procedures is a task for ordinary judicial resolution using the principles of multi-statute harmonization, not a bar to removal jurisdiction. And we stand on the arguments we previously made that a case with both civil and criminal aspects must be governed by Section 1446(d)'s automatic stay. ODC never offered a different harmonization.

ODC's Opposition to the Motion to Stay also readily demonstrates that Mr. Clark will suffer irreparable harm if the D.C. Bar disciplinary process is allowed to proceed pending appeal. In *BP plc v. Mayor & City Council of Baltimore* the Court held that an

---

[3] *See also* Exhibit 1 at 8-10; *see id.* at 9 (Disciplinary Counsel does not explain why the clerk was informed that the Hearing Committee does not have a clerk's office — a fact that the affidavit suggests may have been important to the clerk's office.").

appeal as of right under 28 U.S.C. § 1447(d) to contest the remand of cases removed under Section 1442 is available to mere government contractors seeking to raise federal defenses. For ODC to argue that *BP* does not apply when the defendant is a Senate-confirmed Assistant Attorney General makes no legal sense and confirms its implacable hostility to the unique federal interests at stake here as against its parochial Bar interests.

Finally, as to the two balancing factors in the four-factor discretionary test, ODC wrongly trivializes the substantive importance of the policy of the federal officer removal statute, which is to vindicate the constitutional supremacy of the federal government by providing an Article III forum to federal officers to protect them from hostility to uniquely federal interests. *See* H.R. Rep. No. 112–17(I), pt. 1 at 3 (2011); *Barr v. Matteo*, 360 U.S. 564, 565 (1959) (federal officer removal protects officers from "vindictive or ill-founded" suits because of action "taken in the exercise of their official responsibilities.").

Below, we first respond (in Section II) to ODC's attempt to distinguish the *BP* case and defeat the applicability of Section 1446(d), on which *BP* relies, and then show (in Section III) that the stay should also be granted under the traditional four-factor test, addressing ODC's argument that its disciplinary proceedings are entirely exempt from Article III jurisdiction under the likelihood of success prong of that analysis.

## II.    UNDER THE *BP* DECISION, THE AUTOMATIC, NON-DISCRETIONARY STAY OF 28 U.S.C. § 1446(d) CONTINUES PENDING APPEAL.

ODC dismisses Mr. Clark's argument from *BP p.l.c. v. Mayor and City Council of Baltimore* as relying on no more than a "stray line." But as our opening brief on the Motion

to Stay showed, the premise of each Justice's analysis, even the dissenter's, was that all proceedings in state court were halted pending resolution of the appeal. The interpretation advanced by ODC simply makes no sense in appeals of remands of federal officer removals. Congress has created a special right of removal for federal officers, expanded it over time, and has further created a special appellate right federal officers can claim to review a remand order. Permitting the state court to proceed during the pendency of the appeal would defeat the purpose of both the federal removal statute and the right of appeal granted by Section 1447(d). The Supreme Court rejected the City of Baltimore's arguments that permitting the appeal would cause delay by noting that Congress had resolved the delay issue against the party seeking remand: "***Here, too, Congress has deemed it appropriate to allow appellate review <u>before</u> a district court may remand a case to state court.***" *BP*, 141 S. Ct. at 1536 (emphasis added). ***All Justices in the* BP *case*** fully recognized that resumption of merits litigation in state/D.C. courts would be delayed where remand orders are appealable, as here. The *BP*-recognized statutory directive for appellate review before remand cannot be complied with if the DCCA and adjuncts continue with merits litigation on a separate track. Congress did not intend to subject federal officers to competitive races held between one court system and another. Instead, Mr. Clark's federal right to have all legal and factual resolutions, from their inception, be determined by Article III umpires cannot be stripped from him.

The statutory underpinning for the Court's conclusion in *BP* is that "appellate

review" must occur "before a district court may remand a case to state court" is Section 1446(d), which provides that "a state court may not proceed 'further unless and until the case is remanded.'" *BP*, 141 S. Ct. at 1539 (quoting Section 1446(d)).

ODC contends this argument is unsupported by precedent. But the *BP* decision is all the precedent required, ODC can point to no case in which the *BP*-based argument made here has been rejected, and the force of our argument is not diminished simply because federal-officer removals are not all that common and thus *BP*, having been decided in 2021, can hardly be expected to have generated a large body of stay decisions.[4]

## III.   THE TRADITIONAL FOUR-PART TEST OF A PROPER EXERCISE OF EQUITABLE DISCRETION ALSO SUPPORTS THE ENTRY OF A STAY.

### A.   *Respondent Has a Strong Likelihood of Prevailing in the D.C. Circuit.*

Neither the District Court nor ODC addressed the central question on the merits of the pending appeal—Congress's decision to afford an Article III forum under Section 1442(a) to protect

> [t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office ….

---

[4] While we were working on this brief today, which would otherwise have closed out the stay briefing in this Court, Hearing Committee 12 issued a new order, which offers views on our *BP*-based argument for granting a stay ***even while simultaneously continuing to hold the matter in abeyance in the Hearing Committee***. *See* Exh. 1. To respond to this late-breaking development coming on this Reply's filing day, we will thus also prepare and file today a short motion to allow supplemental stay briefing, wherein we would propose to respond to the Hearing Committee order of today in more detail.

The Supreme Court has made plain that "[t]he federal officer removal statute is **not** 'narrow' or 'limited.' *Colorado v. Symes*, 286 U.S. 510, 517 (1932). At the very least, it is broad enough to cover all cases where federal officers can raise a colorable defense arising out of their duty to enforce federal law." *Willingham v. Morgan*, 395 U.S. 402, 406-07 (1969). *See also Kolibash*, 872 F.2d at 576, holding a bar discipline matter removable because "[t]he form that the state action takes is therefore not controlling; 'it is the state's power to subject federal officers to the state's process that § 1442(a)(1) curbs.'"[5]

Bar disciplinary proceedings against federal officers easily fall within the broad scope of the federal officer removal statute. Against this, the best ODC can muster is the argument that the federal officer removal statute applies only to a "civil action or criminal prosecution," 28 U.S.C. § 1442(a), and that State Bar disciplinary proceedings fit into neither category. But these terms are defined in Section 1442(d)(1) (emphasis added), in such a way to plainly refute ODC's argument:

> (1) The terms "civil action" and "criminal prosecution" include **any proceeding** (**whether or not ancillary to another proceeding) to the extent that in such proceeding a judicial order**, including a subpoena for testimony or documents, **is sought** or issued.

We now turn to examining each of these terms with care.

---

[5] Earlier in these proceedings, ODC relied on *In re Echeles*, 430 F.2d 347 (7th Cir. 1970) (holding lawyer discipline proceedings before an executive committee of the U.S. District Court were neither civil nor criminal). But that case is distinguishable because it was not a removal case premised on the federal officer removal statute, Section 1442. There was no concern that discipline was being imposed without resort to an Article III forum.

*1. A District of Columbia Bar Disciplinary Case Is a "Proceeding" Described by Section 1442(d)(1).* The jurisdiction and authority of the Board, its Hearing Committees, and ODC pursuing this case are conferred by the District of Columbia Court of Appeals in D.C. Bar Rule XI, which is captioned "Disciplinary Proceedings." The word "proceeding" appears 93 times in Rule XI. These disciplinary proceedings therefore easily fit within the capacious definition of "any proceeding" in Section 1442(d)(1).

This Court characterized the disciplinary proceedings in this case as originating in a court, namely the DCCA. *But see* June 8 Order at 24 n.6 (referencing Section 1442(d)(6)).[6]

*2. Both ODC and Respondents in Proceedings Prescribed by D.C. Bar Rule XI Must Seek Judicial Orders from the DCCA in Order to Accomplish Their Intended Outcomes.* ODC has recently stated at a meet-and-confer telephone conference ordered by Hearing Committee #12 that it seeks to disbar Mr. Clark—a remedy that requires an order from the D.C. Court of Appeals. *See* Rule XI § 9(g) & (h). ODC has already sought orders in the DCCA (several times at the sealed, investigative stage that concluded in July 2022, and once as to a subpoena issued in October of 2022). And Mr. Clark, in response,

---

[6] Section 1442(d)(6) uses the term "includes" as a term of enlargement, not limitation. "In definitive provisions of statutes and other writings, 'include' is frequently, if not generally, used as a word of extension or enlargement rather than as one of limitation or enumeration." *American Sur. Co. of New York v. Marotta*, 287 U.S. 513, 517 (1933). It would be anomalous at best to construe the statute to include the Superior Court but exclude its master, the DCCA. We also further rebut this argument in Subpoint 3 below, as it would give any State or the District they "keys to the kingdom" to circumvent the removal statute simply by opting to offload judicial functions to bodies it claims are not themselves courts.

sought an order of dismissal on jurisdictional grounds from the DCCA, arguing that, in accordance with the rule of *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1998), the Hearing Committee may not proceed to the merits without first disposing of jurisdictional objections. *See* Dkt. # 1-61, DCCA Docket Sheet, listing motions filed in that Court *and, e.g.,* Dkt. ## 1-62 and 1-67. Under Rule XI §§ 8(g) & (h) and 9(g) & (h), jurisdictional exceptions to the proceedings themselves and to any rulings or recommendations made by the Board or Hearing Committee are reserved for the DCCA. Here, it is indisputable that the bar disciplinary proceedings against Mr. Clark are a "proceeding" in which an ultimate judicial order (to impose discipline) is sought. Indeed, it is a "proceeding" in which multiple types of orders have already been sought or issued.

   *3. Proceedings Before a Hearing Committee and the Board Are "Ancillary" to the Exercise of the DCCA's Disciplinary Jurisdiction.* Proceedings before Hearing Committee 12 and the Board of Professional Responsibility are "ancillary" to, or in aid of, the process by which the DCCA enforces its disciplinary rules. *See* D.C. Bar Rule XI § 1 (asserting disciplinary jurisdiction and promulgating rules in aid of that jurisdiction)). "Ancillary" is defined in *Black's Law Dictionary* (5th ed. 1979) as "Aiding; attendant upon; describing a proceeding attendant upon or which aids another proceeding considered as principal. Auxiliary or subordinate."[7] The role of a Hearing Committee is analogous to

_____

[7] The definition of "ancillary" in the 12th Edition of *Black's Law Dictionary* is truncated out of excessive zeal for simplicity and no longer properly captures the meaning of the word.

that of a special master, though not perfectly so. And this Court has recognized that the disciplinary process established by the DCCA purports to bind itself to "accept the findings of fact made by the Board unless they are unsupported by substantial evidence of record, and shall adopt the recommended disposition of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted." June 8 Slip Op. at 4.[8]

The DCCA could have used its supervisory powers to proceed via factfinding by the D.C. Superior Court. But it has instead chosen to delegate this function to what many analogue state bars and the ABA refer to as "lawyer self-regulation." *See, e.g.,* Jayne R. Reardon, *As Lawyers We Must Further the Public Interest*, American Bar Association (Aug. 13, 2021) ("What does it mean to be a self-regulated profession?").[9]

---

[8] Relatedly, ODC attempts to suggest that any "report" issued by Hearing Committee 12 will carry no consequences. *See* ODC Stay Opp. at 18. To the contrary, the DCCA has said that it can be bound by Hearing Committee resolutions of "subsidiary fact." *In re Krame*, 284 A.3d 745, 755 (2022). We reserve on whether this holding is consistent with the Constitution but what it does do is eviscerate ODC's claims made to defeat the stay— suggesting that a Hearing Committee 12 report will be regarded as purely advisory.

[9] The Board, Hearing Committee 12, and ODC themselves recognize their own court-ancillary nature by providing in the caption of each filing (emphasis added) before the Hearing Committee:

**DISTRICT OF COLUMBIA COURT OF APPEALS**
BOARD ON PROFESSIONAL RESPONSIBILITY
HEARING COMMITTEE NUMBER TWELVE

*See*, *e.g.*, Exh. 1 attached hereto.

Whatever the policy merits of that choice by the DCCA,[10] it cannot be allowed to defeat the text and purposes of the federal officer removal statutes. Neither States nor the District of Columbia can be allowed to circumvent Section 1442 by the simple expedient of offloading judicial tasks to adjunct bodies that they then try to argue are not "courts." *See, e.g., Volkswagen de P.R., Inc. v. P.R. Labor Relations Bd.*, 454 F.2d 38 (1st Cir. 1972). *See also Upshur County v. Rich*, 135 U.S. 467, 477 (1890) (removal looks to whether a body is involved that is "invested with judicial functions") (there, a "county court" managed executive and financial affairs and thus was not a court-equivalent). But here, the Board and Hearing Committee have clearly been delegated fact-finding and law-ruling powers that invest them with judicial functions. This also answers the non-holding suggestion this Court made in footnote 6 of its June 8 decision—it is immaterial that Sections 1441

---

[10] At least as applied to federal lawyers, the DCCA's disciplinary system threatens Mr. Clark's constitutional rights. The DCCA appears to believe that it can set up a group of private lawyers as a Board of Professional Responsibility, delegate the full panoply of case determinations to them, initially using a special-master-like Hearing Committee to funnel fact findings to the Board, where such a Committee includes not just two lawyers but one lay person. None of these individuals serving at the Board and Hearing Committee level, whether lawyers or lay participants, are commissioned Article I Judges.

We submit it is constitutionally unthinkable for the DCCA to have created a structure where a lay person, at any stage of proceedings, can sit in judgment of the legal responsibilities and internal Executive Branch deliberations of a Senate-confirmed officer like Mr. Clark who was vested and commissioned with delegated Article II Take Care Clause powers by the President. This is another reason for this Court to either reconsider its remand order or grant a stay of it, since remand would strip Mr. Clark not just of an Article III resolution of his case but subject him to two stages of litigation before non-Article I judges. ***This is clearly irreparable harm of a structural constitutional nature.***

and 1442 assume that the first stage of the District's judicial proceedings would occur in Superior Court. The DCCA's choice to vest that ordinary role not in the Superior Court but in a quasi-judicial set of administrative bodies is of no moment to removal analysis.

*4.* ***ODC's Argument That Disciplinary Proceedings Are Neither "Civil Actions" Nor "Criminal Prosecutions" Ignores the Plain Language, Legislative History, and Evolution of a Statute First Enacted More Than Two Centuries Ago in 1815.*** ODC, following the Court's analysis, rests its entire argument that bar disciplinary proceedings are neither a "civil action" nor a "criminal prosecution" on a Committee Report that the 2011 amendment was intended to resolve a circuit split on whether subpoenas to federal officers could be removed under Section 1442. *See* ODC Stay Opp. at 21.

ODC's argument proves too much. From the earliest days of the Republic, Congress has consistently sought to ensure that federal officers and those acting under claim of federal authority can resort to an Article III forum in which to raise their federal defenses and counterclaims. In *Mesa v. California*, the Supreme Court observed:

> On numerous occasions in the last 121 years we have had the opportunity to examine § 1442(a) or one of its long line of statutory forebears. In *Willingham v. Morgan*, 395 U.S. 402, 405 (1969), we traced the "long history" of the federal officer removal statute from its origin in the Act of February 4, 1815, § 8, 3 Stat. 198, as a congressional response to New England's opposition to the War of 1812, through its expansion in response to South Carolina's 1833 threats of nullification, and its further expansion in the Civil War era as the need to enforce revenue laws became acute, to enactment of the Judicial Code of 1948 when the removal statute took its present form encompassing all federal officers. 395 U.S. at 405-406. "The purpose of all these enactments," we concluded, "is not hard to discern."

489 U.S. 121, 125–26 (1989).

In every case in which States or federal or state courts have sought to weaken or dilute these protections, Congress has reacted by expanding them. The most recent amendment, entitled "The Removal Clarification Act of 2011," Pub. L. 112-51, 125 Stat. 545 (Nov. 9. 2011), added the expanded definition of "civil action" or "criminal prosecution" that ODC seeks to limit.

ODC contends this broad definition should be constrained to exclude bar disciplinary proceedings because of one statement in the Committee Report on the amendment explaining that its purpose was to clarify that subpoenas are removable. *See* ODC Stay Opp. at 21. But relying on legislative history to limit the expanded textual scope of Congress' 2011 changes to subpoenas alone is improper, as it dispenses with the full effect of the plain and unambiguous words of the statute, which are ***not*** limited to subpoenas. *See Ratzlaf v. United States*, 510 U.S. 135, 147–48 (1994) (error to use "legislative history to cloud a statutory text that is clear"); *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 808–09 n.3 (1989) ("Legislative history is irrelevant to the interpretation of an unambiguous statute."). Moreover, Congress used the phrase "including a subpoena" as a term of enlargement, not shrinkage. "In definitive provisions of statutes and other writings, 'include' is frequently, if not generally, used as a word of extension or enlargement rather than as one of limitation or enumeration." *American Sur. Co. of N.Y. v. Marotta*, 287 U.S. 513, 517 (1933). "[T]he word 'includes' is usually a term of enlargement,

and not of limitation." 2A Singer [Singer & J. Singer, SUTHERLAND ON STATUTORY CONSTRUCTION] § 47:7, p. 305." *Burgess v. United States*, 553 U.S. 124, 131, n.3 (2008).

In its terms, meaning, ***and*** effect, the 2011 amendment adopted the functional test found in cases like *North Carolina v. Carr*, 386 F.2d 129 (4th Cir. 1967); *Wisconsin v. Schaffer*, 565 F.2d 961, 963 (7th Cir. 1977), *Kolibash,* and *Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408, 415 (D.C. Cir. 1995). This makes this Court's analysis finding the functional approach "out of date" beside the point. The 2011 amendment is relatively recent and it is not an amendment that can be characterized as minor or purely technical. Additionally, while the D.C. Circuit did not refer to the functional test by that name in *Brown & Williamson*, it clearly adopted the reasoning of cases like *Carr* and *Schaffer*. Consider the striking similarity of the decisive language of *Brown & Williamson* in 1995: "We do not believe Congress used the terms 'civil action,' 'against,' or 'act' in the limited fashion that appellant urges, but rather meant to refer to ***any proceeding*** in which state judicial civil power was invoked against a federal official." This fits perfectly with the nearly identical language of Section 1442(d)(1) adopted by the 2011 amendment and illustrates that Congress itself was ratifying the broad functional test.

Reading the statute as a whole in light of its unbroken history since 1815, the text of the statute means exactly what it says. Where, as here, a federal officer seeks to litigate a "claim to a Federal right," Section 1442(a) offers removal jurisdiction as an option.

Justice Strong's emphasis [in *Tennessee v. Davis*] on the presence of a federal defense unifies the entire opinion. He thought it impossible that the

Constitution should so weaken the Federal Government as to prevent it
from protecting itself against unfriendly state legislation which "may affix
penalties to acts done under the immediate direction of the national
government, and in obedience to its laws [or] may deny the authority
conferred by those laws." *Id.,* at 263.

*Mesa*, 489 U.S. at 127, *quoting Tennessee v. Davis*, 100 U.S. 257, 283 (1880).[11]

**5. *This Court Erred by Creating a New Category of Non-Removable Actions,
Especially Given the Breadth of Section 1442.*** Finally, Congress knows how to specify

which cases are unremovable, enumerating them in 28 U.S.C. § 1445. Since State/District

disciplinary cases do not fit into any of these enumerated nonremovable categories, the

plain language of Section 1442 and its related complex of removal statutes control and

this case was properly removed. The *expressio unius exclusio alterius* canon weighs against

any interpretation of the removal statutes that would create a new category of

unremovable actions where Congress has not done so. *See O'Melveny & Myers v. FDIC*,

512 U.S. 79, 86 (1994); *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507

---

[11] Also instructive is *Wilson v. Gottlieb*, 821 F.Supp.2d 778 (D. Md. 2011), which reviewed
the competing "literal test" and "functional test" lines of cases concerning whether
proceedings before administrative adjudicatory bodies were removable. Feeling itself
bound by *Kolibash*, 872 F.2d at 576, the Court in *Gottlieb* applied the functional test, but
noted that the literal test cases were typically general removal cases, while *Kolibash* was
a federal officer removal case in which the policies and purposes of federal officer
removal required a broad construction of removal jurisdiction. Strict construction of
removal jurisdiction in general removal cases, *Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S.
100, 107–09 (1941), thus cannot properly be applied to federal officer removal cases given
the repeated and emphatic instruction of the Supreme Court that the policy of the federal
officer removal statute "should not be frustrated by a narrow, grudging interpretation."
*Willingham*, 395 U.S. at 406-07.

U.S. 163, 168 (1993). ODC's answer to this argument is there is no reason to consider the enumeration of unremovable categories because bar discipline cases are categorically unremovable in the first instance, an argument that we have shown above is without merit and which, in any event, is circular. If it could work, it would be a nice trick to imagine that an express enumeration by Congress of the specific types of cases that are unremovable can be ignored based on one litigant's bare assertion there are other categories of cases Congress failed to take note of.

     *6. ODC's Argument That the Motion to Stay Is Moot Makes No Sense.* ODC argues on page 5 of its Opposition that the Stay Motion is moot. Of course it isn't. This Court isn't the final word and Mr. Clark is entitled to try to preserve the *status quo* pending resolution by the D.C. Circuit and perhaps even by the U.S. Supreme Court.

**B.**      *Subjecting Mr. Clark to an Administrative Trial Before the Removal Jurisdiction Dispute Is Fully Adjudicated Would Cause Irreparable Harm by Defeating the Congressional Directive That an Article III Forum Is Available for the Litigation of Federal Claims and Defenses.*

     We respectfully submit that ODC's Opposition to the Motion to Stay is iron proof that Mr. Clark will suffer irreparable harm if the disciplinary process established under the jurisdiction of the DCCA is allowed to proceed. Unlike the District Court, which held that federal jurisdiction should not be available under Section 1442(a), at least in part *as a matter of policy, see* June 8 Slip Op. at 30 ("Indeed, well-established principles of comity for state proceedings counsel against it."), ODC argues that plain text cannot be applied *as a matter of statutory construction* because Bar disciplinary proceedings are neither

criminal nor civil, and Bar disciplinary authorities are not "courts"—even though their authority stems from being arms of the DCCA and, as we have explained above, "proceedings" seeking judicial orders are all that is required to remove.

Just as in the order of remand at issue in *BP p.l.c. v. Mayor and City Council of Baltimore* decision from 2021, ODC's position (regrettably adopted by this Court) overlooks the very problem that Section 1442 was designed to ameliorate: the predisposition of D.C. officials against the very significant federal defenses here. In *BP*, Baltimore sought hundreds of millions of dollars in climate damages from BP and was not inclined to credit BP's federal defenses—which were both substantial and complex.

Even more so than in *BP*, Mr. Clark presents a textbook case for why Congress has **consistently expanded federal officer removal over the span of more than two centuries**, *see* Section III(A), *supra*. Indeed, Congress or the Supreme Court has shut down every instance in which state/local officials (like the City of Baltimore or like the City of Washington, D.C. here) have tried to use creative characterizations to avoid the ironclad policy that federal defenses are **inherently** federal questions where an Article III forum for resolution must be available to the federal officer defendant at his or her option.

We also respectfully submit that, at least in this case, "comity" is irrelevant. The D.C. Bar is an arm of **Congress**, U.S. Const. art. I, § 9, cl. 17 (Seat of Government), and this proceeding was instituted after ODC consulted with the Democratic staff of the Senate Judiciary Committee, which used anonymous January 2021 leaks to the *New York Times*

and privileged and confidential internal Justice Department documents as the basis of a staff report alleging that Mr. Clark violated various provisions of Rule 8.4 of the D.C. Rules of Professional Conduct. On the facts alone, this is a case in which Congress and the D.C. Bar are seeking to use the unique procedures available in the attorney disciplinary process to avoid the basic procedural due process, administrative law, First Amendment, and, especially, *separation of powers issues* it raises.

Thus, even were Mr. Clark to concede, for purposes of argument, that 28 U.S.C. § 530B recognizes that state courts have authority to regulate the behavior of federal attorneys who practice before such courts, or who serve clients within their respective jurisdictions, it must be read in conjunction with 42 U.S.C. § 1442(a) to create a federal forum in which to litigate federal defenses. We stand on our briefing, which this Court did not address, that Section 530B cannot be read as an implied repeal of Section 1442. This Court held that allowing federal attorneys to take advantage of the explicit removal jurisdiction provided in Section 1442 "would utterly frustrate [the Congressional] scheme [embodied in 28 U.S.C. § 530B] to construe the terms "civil action" and "criminal prosecution" … to encompass the Board's disciplinary proceedings, and thereby permit near wholesale removal of such proceedings against federal government attorneys to federal court." June 8 Slip Op. at 23. In the Court's view, *Willingham* and *Mesa* "say nothing about how courts should construe the nature of the *proceeding* itself—especially in the presence of a separate statute committing the subject matter of a proceeding to state

control." *Id.* at 28.

Congress, however, answered that question in its 2011 amendment to Section 1442(d)(1):

> The terms "civil action" and "criminal prosecution" include ***any proceeding (whether or not ancillary to another proceeding) to the extent that in such proceeding a judicial order***, including a subpoena for testimony or documents, ***is sought*** or issued.

By its own admission, ODC seeks an order from the DCCA (an Article I body) disbarring Mr. Clark for a draft letter, never sent but discussed, within the inner sanctums of the highest reaches of the Article II branch regarding the exercise of core Article II authorities that Senator Durbin (acting alone) and ODC personally decry.

The dramatic comity implications that this Court saw arising from state courts (or their analogues, like the District) being stripped of powers to discipline federal lawyers appearing in those state courts (or in federal courts sitting in those States) are not present here. This case involves the District of Columbia, a federal instrumentality subject to congressional control. And this case involves an Article I process that is ***reaching into*** internal Article II deliberations. Mr. Clark has not been charged by ODC for violations in any representation made to a state court, or federal court (whether an Article I or Article III court), or to a state or federal tribunal of a legislative or administrative character.

Moreover, all of these policy arguments that the Court deployed, however, are quite beside the point: The text of Section 1442 and related statutes readily permits this removal, as *Kolibash* held even decades before the 2011 amendment. The 2011 amendment

simply makes that conclusion even more pellucid. Mr. Clark respectfully submits that the political prize that Disciplinary Counsel seeks is an improper "judicial order."  But it is clearly a sought-after order that falls within the intended scope of Section 1442(d)(1).

C.    *There Would Be No Prejudice to the DCCA, Its Instrumentalities, the D.C. Bar, or to Others.*

*1. The Supreme Court Has Expressly Rejected Any Claim That the Inevitable Delay Caused by an Appeal of Right Under 28 U.S.C. § 1447(d) Causes Prejudice to the Parties.* ODC dismisses Mr. Clark's argument that the Court's decision in *BP, supra,* controls the stay issue. But, as we showed in our opening brief, in *BP,* all of the eight Justices who voted there (Justice Alito did not participate in the case) recognized that the intended effect of its holding was that **all** proceedings in state court are stayed pending resolution of an appeal of a remand order pursuant to the combined logic of Sections 1442(a) and 1446(d):

> For that subset of cases, Congress has expressed a heightened concern for accuracy, authorized appellate review, and accepted the delay it can entail. The fact that the law as written allows appellate courts to examine **all** (and not just **some**) removal grounds in these cases perhaps just demonstrates, as Judge Easterbrook has suggested, a congressional judgment that the "marginal delay from adding ... extra issue[s] to a case where the time for briefing, argument, and decision has already been accepted is likely to be small." [citation omitted]

141 S. Ct. at 1542 (emphasis added). This is true even of Justice Sotomayor in dissent.

*See BP*, 141 S. Ct. at 1543-45 (Sotomayor, J., dissenting) (anticipating that interruption of state/D.C. proceedings would arise when federal-officer removal appeals occur).

While the question the Supreme Court granted *certiorari* to review in *BP* was whether all—or only some—of the holdings of the District Court in a removed case under Section 1442 were properly reviewable on appeal, the Supreme Court's holding that the right of appeal granted by Section 1447(d) necessarily includes all such issues is based on the plain meaning of the statute and its obvious logic. In its view, "***Congress has deemed it appropriate to allow appellate review before a district court may remand a case to state court.***" *BP*, 141 S. Ct. at 1536 (emphasis added). As a result, ***all*** issues decided by this Court are reviewable on appeal as a matter of right, and no prejudice could ensue from a stay that under *BP* should be held to already be in full effect.

    ***2. There Is No Prejudice to Anyone Because There Was No Operative Remand in Light of Section 1447(c).*** Section 1447(c) provides, in relevant part: "A certified copy of the order of remand shall be mailed by the clerk to the clerk of the State court. The State court **may thereupon proceed** with such case." (emphasis added). The statute is not self-executing. ***Someone*** must make a request, pay any applicable fees, and ensure that the Clerk of the District Court enters the fact of compliance with Section 1447(c) on the docket. Because none of this has happened, remand has not actually even occurred.

    Because it does not want to cure its lack of compliance with Section 1447(c) (or even acknowledge a problem)—or perhaps because it is now embarrassed by the Metzler affidavit, which the Hearing Committee has itself questioned just today—ODC posits that there is no need to comply with the mailing requirement because the Board of

Professional Responsibility is not a "court," and it has no one titled a "clerk" to whom the certified copy of the order could be mailed. As noted above, this argument is wrong.

As noted above, the Executive Attorney is required by D.C. Bar Rule XI § 7(4) "To maintain records of proceedings before Hearing Committees, the Board, and the Court" and returns filings with file-stamps. The Board Case Managers maintain a docket of all filings in the case. *See* Dkt. # 1-1 in Case No. 1:22-mc-00096-RC. Nor is there any doubt that the Board is the disciplinary arm of the DCCA, which most certainly has a Clerk to whom the certified copies could have been sent.

ODC has constructed a strained impossibility narrative to try to moot the mailing requirement of Section 1447(d). The plain fact is that the Board's Case Managers do maintain a docket in the Office of the Executive Attorney and ODC is also well aware that the DCCA maintains its own docket. That ODC is not proceeding in scrupulous compliance with federal removal law and seeks to cut corners is another data point illustrating why Congress has shown great wisdom in recognizing that parochial interests can often be at play when federal officers are being pursued in state or local proceedings. And this concern is only heightened where the targeted federal official is a political appointee from the party disfavored by City of Washington, D.C. at all levels.

In sum, ODC, as recognized by Hearing Committee 12, has created the situation in which we find ourselves. *See* Exhibit 1 at 11 ("In asking Disciplinary Counsel to submit an affidavit, we did not ask Disciplinary Counsel to relate legal advice [from the Clerk].").

23

No remand has occurred, and thus no prejudice is possible.

>    **D.**    *The Public Interest Suffers If the Stay Is Not Granted.*

This case raises significant constitutional and statutory issues concerning the power of the D.C. Bar (effectively an arm of Congress) to investigate, or to discipline, an Assistant Attorney General of the United States (and, by implication, any other lawyer who serves the federal government) "relating ***to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals*** or the collection of the revenue." Section 1442(a)(1) (emphasis added). By definition, the class of individuals covered include the Attorney General, members of Congress and their staff members, and Article III judges along with their law clerks and other staff.

The strength of the public's interest in proper application of the federal officer removal statute can be seen in the Supreme Court's many decisions explaining and enforcing its application, and in Congress's many amendments to strengthen the remedy.

In short, the public interest will suffer if the stay is not granted to permit resolution of the substantial questions presented by the appeal.

## IV.    ODC WRONGLY CONTENDS MR. CLARK CONCEDES THE FACTS OF THE CHARGES AND TRIES TO INTERJECT MERITS ISSUES PREMATURELY.

ODC claims that Mr. Clark has admitted the facts of the Charges against him by failing to deny them. *See* ODC Stay Opp. at 25.  This is not correct, and it is not the first time ODC has made this misrepresentation to a court. *See* Dkt. # 27-1, Exh. 5 at 6-7 (Reply

in Support of Motion to Continue Abeyance of Proceedings Before This Court and/or Defer Proceedings Below) (filed in the DCCA on June 22, 2023). Mr. Clark generally denied the allegations of professional misconduct. *See* Dkt. # 1-21 at 29 (Case No. 1:22-mc-00096-RC). ODC advances other improper arguments by referencing the "basic premise of a democracy," trying to tie Mr. Clark to "many steps" undertaken by others and making allegations against Mr. Clark without citing any supporting evidence. *See id.* This is wildly off-base where there has been no factual hearing or evidence admitted against Mr. Clark at present. All of this actually demonstrates ODC's extreme bias against Mr. Clark and thus becomes another reason to grant the stay. At every step, ODC has only been interested in one side of the story. It gave no credit to the 100-plus pages of objections Mr. Clark filed. And at no point did ODC even seek to interview Mr. Clark, only officials ODC gleaned from media stories who would attack Mr. Clark because they disagreed with his views. But this is precisely why federal officer removal exists—to provide a neutral forum to protect federal interests and not one dead-set on vindicating a one-sided narrative.

## CONCLUSION

A stay of this Court's June 8 remand order and opinion should be granted, preferably on the grounds that such a stay is mandatory and automatic (*see* Section II, *supra*), but alternatively on the grounds that such a stay meets the four-factor test for granting discretionary stays as a matter of equity (*see* Section III, *supra*).

Respectfully submitted this 28th day of July 2023.

<u>/s/ *Charles Burnham*</u>                    <u>/s/ *Harry W. MacDougald*</u>
Charles Burnham                         Harry W. MacDougald
DC Bar No. 1003464                      Georgia Bar No. 463076
Burnham and Gorokhov, PLLC              Caldwell, Carlson, Elliott & DeLoach LLP
1750 K Street, NW                       Two Ravinia Drive, Suite 1600
Suite 300                               Atlanta, Georgia 30346
Washington DC 20006                     (404) 843-1956
(202) 386-6920                          hmacdougald@ccedlaw.com
charles@burnhamgorokhov.com

## CERTIFICATE OF SERVICE

I hereby certify that I have on this day served counsel for the opposing party with a copy of this *Reply Brief in Support of Motion for Stay Pending Appeal* by filing with the Court's electronic filing system and by email addressed to:

> Hamilton P. Fox, Esq.
> Jason P. Horrell, Esq.
> Office of Disciplinary Counsel
> Building A, Room 117
> 515 5th Street NW
> Washington DC 20001
> foxp@dcodc.org
> horrellj@dcodc.org

This 28th day of July 2022.

/s/ Charles Burnham
Charles Burnham
DC Bar No. 1003464
Burnham and Gorokhov, PLLC
1750 K Street, NW
Suite 300
Washington DC 20006
(202) 386-6920
charles@burnhamgorokhov.com
